201 So.2d 789 (1967)
Harvey Roy WEBSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 703.
District Court of Appeal of Florida. Fourth District.
July 26, 1967.
Rehearing Denied September 12, 1967.
*790 Steadman S. Stahl, Jr., of Houston, Easthope & Stahl, Fort Lauderdale, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and James T. Carlisle, Asst. Atty. Gen., Vero Beach, for appellee.
CROSS, Judge.
The appellant (defendant) was indicted for murder in the first degree, tried and convicted by a jury that recommended mercy, adjudged guilty by the court and sentenced to life imprisonment. It is from this judgment and sentence he appeals.
The primary thrust of the appeal is the denial by the trial court to suppress evidence allegedly obtained by unlawful search and seizure.
In the early morning hours of May 12, 1965, officers of the sheriff's department of Broward County while on patrol came upon an automobile parked in a deserted area of Broward County. The officers stopped, inspected the automobile, found the engine running with all windows rolled up and a hose leading from the exhaust pipe into the rear window. The defendant was found inside unconscious. The officers immediately opened the car door and administered first-aid to the defendant who was attempting to commit suicide. An ambulance was called and the defendant was taken to the hospital.
The officers then checked the number of the license tag and found it to be registered in the name of the defendant. The officers then proceeded to the address obtained from the registration certificate for the purpose of informing someone of the defendant's attempted suicide. When the officers arrived at the address they proceeded to knock on the front door and after receiving no response knocked louder and yelled in hope of arousing any occupant therein. This attempt was unsuccessful; however, the officers did arouse a neighbor across the street who came and told them that a Mrs. Bradshaw lived in the house with the defendant. The officers told the neighbor the condition in which they had found the defendant and continued to determine if *791 anyone was in the house. They went around the outside of the house to a bedroom and shone a light into the room. There, in the bed, they saw two feet protruding from under the covers on the bed, and the rest of the body was covered with the covers. A pillow was seen covering the area where the head was located. The officers then hammered on the window with their flashlights and hollered quite loudly. One officer then drove his car to the front of the house and put on his headlights lighting up the front of the house and the inside of the room where the body laid. The officers were advised by the neighbors that the defendant had made remarks in the past that if anything happened to Mrs. Bradshaw that he could not bear to live any longer. The officers being unable to arouse the person lying on the bed believed there was something desperately wrong and that the person lying therein was in dire need of help. The officers finding the doors and windows closed and locked went to one of the rear doors, removed the jalousie and with one of the neighbors entered the home. At the time of the entry into the home the officers had no search warrant. The officers went to the bedroom lifted the pillow from the head of Mrs. Bradshaw and found her throat cut. Other officers were then called and photographs were taken of the scene, and the body was removed to the hospital where the county medical examiner performed an autopsy.
It is the entry into the defendant's home in the absence of a search warrant and the seizure of the body of Mrs. Bradshaw that defendant contends is unlawful and that the evidence so obtained should have been suppressed.
In support defendant relies upon the well-established principle that ordinarily a home may not be searched without a search warrant except as incidental to an arrest that takes place in the premises. Haile v. Gardner, 1921, 82 Fla. 355, 91 So. 376. Admittedly, there was no search warrant in this instance.
In determining matters under the Fourth Amendment of the Constitution of the United States,[1] and Section 22 of the Declaration of Rights, F.S.A.,[2] as contained in the Florida Constitution, we must bear in mind the basic principle that it is only "unreasonable" searches that are prohibited, not all searches. Whether a particular search is or is not reasonable must be determined by the circumstances surrounding the search and the manner in which it was conducted. Range v. State, Fla.App. 1963, 156 So.2d 534; McCain v. State, Fla.App. 1963, 151 So.2d 841. The reasonableness or unreasonableness must be determined largely by the facts of the particular case.
The constitutional provision regulating searches and seizures is intended to protect persons against oppression and not to bring into being numerous minute technical obstructions against the enforcement of criminal law. United States v. Mc-Daniel, D.C. 1957, 154 F. Supp. 1.
For example, it has been said more than once that that which is in plain view is not the product of a search. Ker v. State *792 of California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; United States v. Barone, 2d Cir.1964, 330 F.2d 543; Ferrell v. Commonwealth, 1924, 204 Ky. 548, 264 S.W. 1078. In the Ferrell case it was stated that a search warrant is not necessary where the object sought by the search is visible, open and obvious to anyone within a reasonable distance employing his eyes.
In the case sub judice the officers did not enter the premises for the purpose of searching and seizing any object or thing therein. The officers looked through the window of the home and saw what they believed to be a person in distress in the dwelling house. After a considerable effort to make themselves known to the person therein and with no success, the officers perceived there was no movement on the part of what they believed to be someone lying on the bed. The officers could see only two feet protruding from the covers; the rest of the body was covered with a bed covering and on the face and over the head of the body was a pillow. Seeing a person in that position, motionless and with a pillow over the head, it was only reasonable for the officers to assume the person was in great distress or dead. There was no element of trespass or fraud in the officers' entry into the defendant's home. They were merely doing their duty when they entered the defendant's premises under these circumstances; their duty certainly being to effect a rescue or to render aid to someone whom they had reasonable belief was in dire peril.
The general rules governing searches and seizures are subject to the exception of emergency situations, sometimes called the "exigency rule." The reasonableness of an entry by the police upon private property is measured by the circumstances then existing. The right of police to enter and investigate in an emergency, without an accompanying intent either to seize or arrest, is inherent in the very nature of their duties as peace officers and derives from the common law. United States v. Barone, supra. The preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties; it is an overriding justification for what otherwise may be an illegal entry. It follows that a search warrant is not required to legalize an entry by police for the purpose of bringing emergency aid to an injured person. Frequently, the report of a death proves inaccurate and a spark of life remains sufficient to respond to emergency police aid. As a general rule, we think an emergency may be said to exist, within the meaning of the "exigency" rule, whenever the police have credible information that an unnatural death has, or may have, occurred. And the criterion is the reasonableness of the belief of the police as to the existence of an emergency, not the existence of an emergency in fact. Wayne v. United States, 1963, 115 U.S.App.D.C. 234, 318 F.2d 205; Davis v. State, 1964, 236 Md. 389, 204 A.2d 76; compare Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.
It seems to us that under such circumstances it would be quite illogical, if not ridiculous, to expect the officers to obtain a search warrant preceding their entering the premises to help a person who has been observed by the officers and whom the officers reasonably believed to be in peril.
It was to help or aid the person for which the officers entered the house and then discovered that it was Mrs. Bradshaw that was lying on the bed with her throat cut. In light of all these circumstances the entry by the officers into the house was reasonable and lawful. Since the entry into the premises was lawful and was not for the purpose of making a seizure, the officers seeing items that might be helpful in the investigation, the seizure of these items and the body was lawful.
We have considered the remaining point raised by the defendant on appeal and find *793 the defendant has failed to demonstrate reversible error.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.
WALDEN, C.J., and MacMILLAN, HUGH, Associate Judge, concur.
NOTES
[1] U.S.Const. Amend. IV. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[2] Declaration of Rights, Sec. 22, Const. of Fla. Searches and seizures. "The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."