249 So.2d 748 (1971)
STATE of Florida, Appellant,
v.
Richard Stewart BELL and Nancy Carol Yaeger, Appellees.
No. 71-63.
District Court of Appeal of Florida, Fourth District.
June 7, 1971.
Rehearing Denied July 19, 1971.
Marvin U. Mounts, Jr., County Sol., James Carlisle and John H. King, Asst. County Sol., West Palm Beach, for appellant.
David Roth, of Cone, Wagner, Nugent, Johnson, McKeown & Dell, West Palm Beach, for appellees.
MAGER, Judge.
Appellant, the State of Florida, appeals an order suppressing evidence and confessions entered in favor of defendants, Richard Bell and Nancy Yaeger, who had been charged with possession of marijuana.
The facts, as found by the trial court and set forth in the order appealed from, are:
"Police Officer, Joseph McCarthy, of the West Palm Beach Police Department was on routine patrol in a business district within the City of West Palm *749 Beach. At approximately 3:30 in the morning he saw a light in the rear window of a business establishment with a blanket over its window and then proceeded to the front door of the business establishment and found that although it was closed it was not locked. At that time the officer returned to his patrol car and called for assistance for he believed a burglary was in progress. Sergeant Flesh of the West Palm Beach Police Department responded to the call for assistance and Officer McCarthy directed Officer Flesh to the rear door of the premises. Officer McCarthy then, without knocking, without permission, and without a search warrant, entered the front door of the store by opening the door, proceeded to a second door which led to the back room where he saw the light and opened that door and saw: The two defendants sitting on a bed discussing astrology, marijuana, and the heavy odor of burnt marijuana. Brief inquiry of the defendant, Richard Bell, revealed that the latter had just rented the place of business and was living or residing in the back room which eliminated further investigation relating to a breaking and entering.
"Officer McCarthy then summoned Officer Flesh into the room. Officer Flesh directed Officer McCarthy to call the Captain and while this was being done Officer Flesh read to the defendants their constitutional rights pursuant to the Miranda Decision. Officer McCarthy returned to the room, Officer Flesh left, Lieutenant Mann arrived and the defendants were arrested for possession of marijuana, after which, a full search of the room was made with the assistance of the defendant Richard Bell.
"Officer McCarthy had training on the detection of marijuana and could identify its smell, however, on the night in question he was not pursuing any narcotics investigation, but rather, was on routine patrol in a business area and all objects seized within the premises were in plain sight upon entry into the room."
It is clear that if the arresting officer had a right to enter the building and to be where he was when the defendants were observed, then the marijuana, being contraband in plain view, was subject to seizure without a search warrant and admissible into evidence. Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; Webster v. State, Fla.App. 1967, 201 So.2d 789. Defendants' arrest would likewise have been proper, and their inculpatory statements admissible. See Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The crucial issue in this case, therefore, is the propriety of the officer's entry into the building.
Section 901.19(1), Florida Statutes 1969, F.S.A., provides that:
"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he has announced his authority and purpose."
The Florida Supreme Court in Benefield v. State, Fla. 1964, 160 So.2d 706, interpreted this statute to mean that
"* * * [E]ven if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify *750 the officers in the belief that an escape or destruction of evidence is being attempted. * * *" (Emphasis added.)
Appellant concedes that the arresting officer's entry into the building in the instant case was an entry by breaking within the meaning of F.S. § 901.19(1), F.S.A., as interpreted by Benefield. Appellant, however, contends that the third exception set forth in Benefield to the requirement of knocking and announcing purpose is applicable  that is, that the officer's peril would have been increased had he demanded entrance and stated his purpose.
The trial court was of the opinion that there was insufficient justification for entry of the arresting officer into appellant's premises without announcing his authority and purpose within the meaning of Section 901.19(1), as construed in the Benefield case.
We readily recognize that a trial court's ruling on a motion to suppress comes to this court with a presumption of correctness and in testing the accuracy of a trial court's conclusion we should interpret the evidence and all reasonable inferences and deductions capable of being drawn therefrom in a light most favorable to sustain these conclusions. Rodriguez v. State, Fla.App. 1966, 189 So.2d 656. From our review of the record, however, we are of the opinion that the evidence before the court justified the entry by arresting officer Joseph McCarthy into the premises without first announcing his authority. As was observed in Webster, supra, what the state and federal constitutions forbid is not all searches and seizures but unreasonable searches and seizures; and whether a particular search is or is not reasonable must be determined by the circumstances surrounding the search and the manner in which it was conducted. See State v. Parnell, Fla. 1969, 221 So.2d 129; see also Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The testimony of officer McCarthy clearly reveals that he was patrolling the alleys in a business area when at approximately 3:30 A.M. he saw a light in the rear window of a business establishment with a blanket over the window. In being questioned as to why he entered the building by the front door (which was not locked) without knocking or otherwise announcing his entry, officer McCarthy stated:
"Not in that circumstances, and at that time I wasn't about to open a door where there is a light on in the back, fearing it could be a burglar."
The arresting officer was not on a special narcotics detail but was patrolling the general area in connection with his assignment. The arresting officer also indicated that he had no prior information either concerning the existence of narcotics or that the premises in question was anything other than a business establishment. As far as the officer was concerned, as the evidence reflects, to have knocked on the door would have placed him in peril if a burglary was in process, within the meaning of the Benefield case. The fact that it turned out that there was no breaking or entering or any burglary in process does not in our opinion negate the propriety of the officer's presence on the premises in the first instance. We feel that the criterion is the reasonableness of the belief as to the peril, not the existence of a peril in fact. Judge Barkdull in his concurring opinion in Rodriguez, supra, observed in part:
"* * * [I]f the record reveals that the facts known to the arresting officers before their entry are not inconsistent with a good faith belief on their part that compliance with § 901.19(1) Fla. Stat., F.S.A., is excused, their failure to comply with the formal requirements of said section does not justify the exclusion of the evidence they obtain. See: People v. King, 140 Cal. App.2d 1, 294 P.2d 972; People v. Ramsey, 157 Cal. App.2d 178, 320 P.2d 592. This is so because the officers must decide this question ordinarily on the spur of the moment and without benefit of hindsight. * * *"
*751 The rationale for a police officer's nighttime inspection of a business premises while on routine patrol is aptly demonstrated in People v. McErlean, 1962, 38 Misc.2d 634, 235 N.Y.S.2d 657, at p. 660:
"Police Departments were created and have developed in metropolitan areas to meet a need of the citizenry for protection of not only life and property, but of the peace of the community and the social order. Police practices, procedures and systems have evolved over the years to more adequately meet the needs of the communities they serve.

"Among these is the crime prevention activities of the police. The citizenry of such areas relies upon this police activity and regards it as a right of citizenship in such areas. There is much need for crime preventive police activity in metropolitan areas as there is for fire prevention activity of Fire Departments, or for preventive medicine by Health Departments and the medical profession."
The rules and procedures relating to patrol activities involved in the McErlean case, supra, require police officers "to note where lights are ordinarily left burning at night * * * at night frequently examine all doors on his post * * * investigate all suspicious circumstances, persons loitering about or acting suspicious."
It is not unreasonable to assume that the patrol procedures applicable to the police department of West Palm Beach require police officers to follow a similar course of action when patrolling business districts at night. In fact, in the case subjudice officer McCarthy testified that in patrolling his beat he was looking for "lights on in businesses, open doors, and anything that looked out of order at 3:30 in the morning." It would, however, seem unreasonable for officer McCarthy to have ascertained whether the business establishment was also being utilized as a residence prior to obtaining entry where he was acting "on the spur of the moment without the benefit of hindsight" in furtherance of his crime prevention activity. (See Rodriguez v. State, supra). We question whether any court, sitting far removed from the actual circumstances and looking back at the cold record of the situation can effectively substitute its judgment for that of officer McCarthy and conclude that "his peril would not have increased had he announced himself." We ought instead to evaluate the circumstances of the situation guided by the test of good faith and reasonableness and ascertain (1) whether the circumstances were such as to reflect good faith compliance with Section 901.19, and (2) whether under such circumstances any prudent police officer would have reasonably taken similar action under the assumption that had he done otherwise he would have increased his peril. The test therefore is analogous to the one utilized in determining whether there existed reasonable grounds to believe that a felony was being committed and reasonable ground to believe that the person to be arrested was committing it so as to authorize arrest without a warrant. In making such determination sufficiency of knowledge by the arresting officer is ascertained:
"[N]ot by analyzing the effect of each known circumstance in isolation, but by a conclusion of what a reasonable man, knowing all the facts within the cognizance of the officer would have believed under all the circumstances. These are not technical but are factual and practical considerations of everyday life upon which reasonable and prudent men act, not legal technicians. * * *" Range v. State, Fla.App. 1963, 156 So.2d 534, at 536.
Daiz v. State, Fla. 1949, 43 So.2d 13.
We do not in any sense or inference of our words validate, approve or condone unreasonable searches and seizures or suggest that unreasonable searches or seizures are permissible under any circumstances  whether by indirection or subterfuge. On *752 the contrary, we simply conclude that the entry under the circumstances of this case does not constitute an unreasonable search and seizure.
If officer McCarthy had found a burglary in process, in our opinion, the circumstances surrounding his entry would have been justified. If entry under those circumstances was proper we fail to see where such entry is rendered invalid if it later turns out that some other crime is found to have been committed. See for example Ludwig v. State, Fla.App. 1968, 215 So.2d 898.
It would seem to be an unreasonable deterrent to the effective and reasonable crime prevention process to have required officer McCarthy to knock on the door of a business establishment at 3:30 in the morning, after he had observed a light burning and a blanket covering a rear window, where officer McCarthy in good faith reasonably believed that to have announced himself would under those circumstances have increased his peril. We find that there is no irreconcilable conflict between the Fourth Amendment prohibition upon unreasonable searches and seizures by police agencies, on the one hand, and, on the other, the crime prevention process of police forces charged with the duty of patrolling the community, preserving the peace and the maintenance of law and order therein. Each case must turn on its own set of facts and circumstances and it is our view that the facts and circumstances in the case sub judice justify the presence of the arresting officers and the seizure of the evidence in the plain view of such officers.
We therefore conclude that the trial court was in error in granting the motion to suppress.
Reversed.
OWEN, J., concurs.
CROSS, C.J., dissents, with opinion.
CROSS, Chief Judge (dissenting):
I respectfully dissent.
The primary issue on this appeal is the propriety of the police officers' entrance into the building where defendants were found. The majority opinion emphasizes the business character of the neighborhood and the fact that the building in question appeared to be a business establishment. The majority, however, overlooks the fact that the building, or at least that part of it in which defendant was found, was in actuality defendant's dwelling place or "home."
The Florida Supreme Court in Benefield v. State, supra, set forth the requirements of Section 901.19(1), Florida Statutes, F.S.A., for police entry into a building, including several exceptions to the general rule that the officer must first knock and announce his purpose. The court took pains to point out, however, that the requirements of § 901.19(1) should be strictly observed if the building happened to be one's home. The rationale for this insistence on maintaining the sanctity of the home was explained thusly:
"Entering one's home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. * * * This sentiment has moulded our concept of the home as one's castle as well as the law to protect it. The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. That is why the law protects its entrance so rigidly. The law so interpreted is nothing more than another expression of the moral emphasis *753 placed on liberty and the sanctity of the home in a free country." 160 So.2d at 709.
It is undisputed that the room in which defendant was located at the time of the arrest was the dwelling place of defendant. The fact that a building is in part used as a business does not deprive those parts used as living quarters of their status as a private dwelling. Cf. Section 933.18(7), Florida Statutes 1969. The occupant of such a dwelling is entitled to insist on strict compliance by police with the requirements of § 901.19(1). Benefield v. State, supra. The logic of the majority opinion would give those persons living in business districts, or who maintain their residence in a building containing a business, less protection from unreasonable entries than would be afforded those living in houses or residential areas.
No one disputes the need for effective law enforcement in metropolitan areas as discussed in the McErlean case cited by the majority. What is disputed, however, is that § 901.19(1) affords citizens living in these areas less protection than people living elsewhere.
The court here analogizes the test for determining reasonableness of entry under § 901.19(1) to that of determining the reasonableness of an arrest without a warrant. The persuasiveness of this analogy is, I believe, open to serious question. Benefield v. State, supra, established that not only must police have probable cause to arrest a person, but that they must strictly comply with § 901.19(1) if an entry into a home is made to effect the arrest. The constitutional strictures surrounding intrusions into one's home at least arguably stand on an even higher plane than the "probable cause" requirement concerning arrest without a warrant. Compare Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.
Even accepting arguendo the correctness of this analogy, however, I believe it merely points out that in almost all cases in which the legality of an arrest, seizure of evidence, or, as in this case, entry into a building is at issue, the question will turn on the particular facts presented to the trial court. The factual determination of the trial court should not be reversed on appeal in the absence of clearly demonstrated error. Gagnon v. State, Fla.App. 1968, 212 So.2d 337; Echols v. State, Fla. App. 1967, 201 So.2d 89. In testing the accuracy of a trial court's conclusions on a motion to suppress evidence, the appellate court should interpret the evidence and all reasonable inferences and deductions therefrom in the light most favorable to sustain those conclusions. Cameron v. State, Fla. App. 1959, 112 So.2d 864.
The court, in the instant case, while acknowledging the existence of these principles, appears to draw all inferences and deductions from the evidence against the trial court's conclusions. The reason for reversal is stated to be:
"* * * [W]e are of the opinion that the evidence before the court justified the entry by arresting Officer McCarthy into the premises without first announcing his authority."
This is an insufficient basis for reversal. The mere fact that an appellate court might have reached a different conclusion if presented with the facts in the first instance does not of itself justify reversal.
In conclusion, considering the strict requirements of § 901.19(1) and the Benefield case, and in light of the record as a whole, I do not see how it can be said that there was no substantial evidence to support the trial court's ruling. I would, therefore, affirm the order suppressing the evidence and confessions.