MAGER, Judge
(dissenting):
Most respectfully, I must disagree with the majority for reasons not dissimilar to those set forth in Mattier v. State, Fla.App.1974, 301 So.2d 105, and State v. Nittolo, Fla.App.1974, 303 So.2d 690.
In my humble opinion, the trial court’s order suppressing certain evidence was erroneous and should have been reversed. As I pointed out in Mattier, supra:
“Public confidence in our criminal justice system is diminished and law enforcement agencies are justifiably discouraged when (as in Thomas v. State, Fla.App., 297 So.2d 850) the common sense application of the crime prevention and crime detection functions is strained through a filament of unrealistic exactitude. As noted in Adams v. State, Fla.App.1974, 295 So.2d 114, 115 ‘“there is no war between the Constitution and common sense.” ’ ” (at 106)
From an analysis of the totality of the existing circumstances in the instant situation I cannot help but feel that the police officer’s actions leading to the arrest of defendant for possession of marijuana were reasonable and proper.
The record reveals that at approximately 11:15 P.M. while on routine patrol a police officer stopped a van because of a defective tail light. At the hearing on defendant’s motion to suppress the officer stated that the driver of the van got out quickly and approached the police vehicle giving the officer the impression that the driver did not want the officer to go up to the van. The officer said that he then asked the driver if there was anyone else in the van; upon being advised that there was another occupant present the officer approached the van, looked through a side window and observed defendant sitting in *616 the rear of the van. The officer told the trial court that it was a matter of procedure and as a precaution for the officer’s personal safety and protection that they either ask the occupant to step out of the vehicle or maintain a close observation.
In this particular instance, the officer walked up to the van and shined his flashlight in the window of the vehicle. The officer saw the defendant and stated that it appeared to him that defendant was moving his hand out of his righthand pocket leading the officer to believe that defendant might have a weapon “or something”; consequently the officer requested that the defendant step outside the van. As the defendant was getting out and while the officer was shining his light into the van he observed what appeared to be a baggie containing marijuana as well as detecting the odor of marijuana on the person of the defendant all of which factors ultimately led to the arrest of the defendant for possession of marijuana.
In my opinion, it was not illogical for a police officer confronted by a van-type vehicle to have routinely inquired as to whether it contained any other occupant and then to have taken such other precautions reasonably related to his safety and protection. See State v. Bell, Fla.App.1971, 249 So.2d 748. The criterion is the reasonableness of the belief of the police officer as to the existence of his peril and not the existence of his peril, in fact. State v. Hetzko, Fla.App.1973, 283 So.2d 49. The officer reasonably believed that his own personal safety necessitated the specific actions taken.
The stopping of the van was proper and the police officer had a legal right to be where he was when he observed the marijuana. It is not a search to observe and seize what is so placed where it may be seen by the officer who has a legal right to be where he is. State v. Ashby, Fla.1971, 245 So.2d 225; State v. Parnell, Fla.1969, 221 So.2d 129.
The standard to keep in mind is the constitutional admonition against “unreasonable” searches and seizures and not merely all searches and seizures. As this court pointed out in Webster v. State, Fla.App.1967, 201 So.2d 789:
“The constitutional provision regulating searches and seizures is intended to protect persons against oppression and not to bring into being numerous minute technical obstructions against the enforcement of criminal law. . . .” (at 791)
The factual occurrences in this case, as revealed by the record, do not suggest that the stopping of the van was a contrivance or a pretext to do indirectly what the constitution prohibits directly and which this court would unhesitatingly condemn. See State v. Bell, supra. Nevertheless, the public defender characterizes the police officer’s conduct as “little more than a peculiar type of police harassment, enforced by an overzealous officer’s unceasing adulation of the blue uniform itself and not of what it allegedly stands for.” This cavalier characterization is simply not supported by the facts of this case and does little to assist the court in resolving the legal issues.
In determining the legality of the police officer’s conduct in the instant situation we need not speculate about what the officer might have done here or what he might do when faced with other factors not present here. The question is simply what would a reasonable man have believed and done had he known all of the facts known by the officer in this case. State v. Nittolo, supra. In the instant case the officer acted reasonably and the evidence seized should not have been suppressed. I would therefore reverse.