Paul Mannino Chief of Police Lighthouse Point
QUESTION:
What are the limits of liability under the law that may be incurred when a police officer renders first aid or acts as a `bacd-up' to paramedics?
SUMMARY:
In view of Florida appellate court decision recognizing a common law duty of a municipal police officer to render did to ill, injured, or distressed persons during an emergency and until and unless determined to the contrary by the Florida Supreme Court, municipal police officers are under a legal duty to provide aid to the ill, injured, and distressed during an emergency. Therefore, the provisions of s. 768.13, F. S., the Good Samaritan Act, would not be applicable to police officers acting within the scope of their employment. The liability of a municipality, if any, for the acts of its employee would be limited by the terms of s.768.28(5), F. S., to $50,000 on the claim or judgment by any one person or a maximum of $100,000 on all claims or judgments arising out of the same incident or occurrence.
Your letter states that your department has been informed by its insurance carrier that it has only general liability coverage and does not possess any medical malpractice insurance. I have also been informed by your office that there is no charter provision, ordinance, or valid rule or regulation of the City of Lighthouse Point or its police department which imposes a duty such as providing first aid or acting as a `back-up' to paramedics upon its police officers, nor has any state statute imposing such a duty upon a police officer been brought to my attention.
The Florida Good Samaritan Act, s. 768.13(2), F. S., provides:
 Any person, including those licensed to practice medicine, who gratuitously and in good faith renders emergency care or treatment at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, without objection of the injured victim or victims thereof, shall not be held liable for any civil damages as a result of such care or treatment or as a result of any act or failure to act in providing or arranging further medical treatment where the person acts as an ordinary reasonably prudent man would have acted under the same or similar circumstances.
 Generally, in the absence of a contractual, special professional, or trustee relationship or statutory requirement, a person is not under a legal duty to assist or care for the injured when the injury is not due to the fault of the person sought to be charged. See C.J.S. Negligence ss. 4(4), 4(9) (duty, breach of which may constitute negligence, must be a legal duty); 63(104), and 63(107). See also Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967) (fundamental element of actionable negligence is the existence of a duty owed by person charged with negligence to person injured); Florida First National Bank of Jacksonvill v. City of Jacksonville, 310 So.2d 19 (1 D.C.A. Fla., 1975), cert. discharged, 339 So.2d 632 (Fla. 1976); Drady v. Hillsborough County Aviation Authority, 193 So.2d 201 (2 D.C.A. Fla., 1966) (negligence is a breach of a legal duty). Moreover, a legal duty on any given set of facts exists only if the courts or the Legislature declares that there is a duty. 65 C.J.S. Negligence s. 4(9). The duty owed to a particular person by a governmental entity must be more than that owed to the public generally. See Modlin v. City of Miami Beach, supra; Florida First National Bank of Jacksonville v. City of Jacksonville, supra; Cheney v. Dade County, 353 So.2d 623, 626 (3 D.C.A. Fla., 1977), cert. pending, Case No. 53,178 (Fla., filed January 16, 1978), in which the court stated:
 Section 768.28, Florida Statutes . . . does not create a liability in the State where the act complained of does not giver rise to liability in the agent committing the act, because the duty claimed to be violated is a duty owed to the citizens of the state in general and is not a duty owed to a particular person or persons.
See also Commercial Carrier Corp. v. Indian River County,342 So.2d 1047 (3 D.C.A. Fla., 1977), and Peterson v. Metropolitan Dade County, 360 So.2d 26 (3 D.C.A. Fla., 1978). But see
Department of Health and Rehabilitative Services v. McDougall,359 So.2d 528, 532 (1 D.C.A. Fla., 1978), cert. denied, Case No. 54,590 (Fla. filed November 9, 1978).
*4374 Although one Florida appellate court has held that a municipal police officer is charged with the duty derived from the common law to render aid in emergencies to the ill, the injured, or the distressed, the general rule is that a municipal police department and its police officers are creatures of statute and not of common law origin. See 62 C.J.S. Municipal Corporations s. 568 (`The office of policeman or police patrolman or member of a police department was unknown to the common law, and wherever it exists it is a creation of statute or municipal ordinance.'). Cf. White v. Crandon, 156 So. 303 (Fla. 1934) (statutory officers possess only such authority as is expressly conferred or necessarily implied for due and efficient exercise of powers and duties expressly granted), 67 C.J.S. Officers s. 102; 62 C.J.S.Municipal Corporations ss. 574 and 575. This office does not have the authority to declare such matters which properly must be resolved by the Legislature or by the courts. In Webster v. State,201 So.2d 789, 792 (4 D.C.A. Fla., 1967), the district court held that the right of police officers to enter and to investigate in an emergency situation, without an accompanying intent to seize or arrest, `is inherent in the very nature of their duties as peace officers and derives from the common law'; thus no search warrant was required to legalize an entry by police for the purpose of bringing first aid to an injured or distressed person, `their duty certainly being to effect a rescue or to render aid to someone whom they had reasonable belief was in dire peril.' The Webster
court thereby declared that it is part of the nature and duty of a police officer, deriving from the common law, to render aid in an emergency situation.
Therefore, until and unless the Supreme Court of Florida overrules such an interpretation of the duties of a municipal police officer, I must conclude that a police officer is required to render assistance to the ill, the injured, and the distressed during an emergency. Accordingly, the provisions of s. 768.13, F. S., Florida's Good Samaritan Act, would not be applicable to a police officer who, being under a duty to do so, renders first aid to injured persons or serves as a `back-up' to a paramedic during an emergency. With regard to the closely related question of a police officer's duty to rescue, see 81A C.J.S. States s. 126(c), p. 557 (a `good samaritan' statute exempting an individual from liability for negligence in attempted rescue efforts does not protect a state officer who is under a duty to assist persons in need of care); see also Lee v. State, 490 P.2d 1206 (Alaska 1971), in which the court held that a police officer was under a duty to go to the aid of an injured minor and therefore the Alaska good samaritan statute was not applicable. Although the Alaska court noted that no case had been found which considered the applicability of a good samaritan act to a policeman, it concluded that `a holding that police officers have no duty to rescue would not comport with public conceptions of their roles.' 490 P.2d at 1209.Cf. Wood v. Morris, 135 S.E.2d 484, 487 (Ga. 1964), in which the court concluded that the applicability of the Georgia guest statute turned in part upon whether the policeman transporting an injured girl in his care had a duty or obligation to care for her, stating:
 Whether or not the defendant policeman had any statutory obligation to care for the plaintiff, we think that there was an obligation in fact arising out of the customary role played by police officers in such emergencies, pursuant to their general responsibility of protecting the lives and welfare of citizens at large.
Thus, if in performing his duties as a police officer rendering aid to an injured, ill, or distressed person, the officer aggravates the person's condition by his negligent acts or omissions, there has been a breach of the duty owed to the victim and an action in tort or negligence may lie. See generally 67 C.J.S. Officers s. 127(b), p. 422 (where law imposes on public officer the performance of ministerial duties in which private individual has special, direct, and distinctive interest, officer is liable to such individual for any injury sustained in consequence of officer's failure to perform duty or to perform it properly); 65 C.J.S. Negligence ss. 2(1), 4(1); see Restatement of Torts (Second) s. 323 (1965), stating:
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
 (a) his failure to exercise such care increases the risk of harm, or
 (b) the harm is sufficient because of the other's reliance upon the undertaking.
Since the actions of the police officer in rendering aid in emergencies would be within the scope of his employment, the city may be liable for the actions of its employee. See Florida Trust National Bank v. City of Jacksonville, 310 So.2d 19, 20-21 (1 D.C.A. Fla., 1975), cert. discharged, 339 So.2d 632 (Fla. 1976), in which the court held that
 a municipality may be held liable for the torts of its employee while acting within the scope of his employment in the performance of executive or administrative functions under the doctrine of respondeat superior, equating that liability with that of private corporations.
See also s. 768.28(1), F. S., which states in pertinent part that an action at law may be brought against a municipality as a subdivision of the state to recover damages in tort for injuries caused by the negligent acts of an employee of the municipality acting within the scope of his employment, if a private person would be liable under the same circumstances. The police officer, however, would not be subject to personal liability in tort for any injuries or damages suffered as a result of any act or omission of action if acting within the scope of his employment or function unless he acted in bad faith, with malicious purpose of exhibited wanton and willful disregard of human rights, safety, or property, s. 768.28(9), F. S., and the city's liability, if any, would be limited by the terms of s. 768.28(5), F. S. At present, the monetary limits specified in s. 768.28(5) are the sum of $50,000 on the claim or judgment by any one person or a maximum sum of $100,000 on all claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence.
If, however, a police officer is not in fact and in law under a common law duty to render such aid in emergencies to ill, injured, or distressed persons, he acts as a volunteer outside the scope of his employment when rendering such aid. He may be held liable for injuries resulting from his actions or omission of action unless he is held immune under the terms of the Good Samaritan Act. The city, however, is not liable for the torts or negligence of its police officers in such circumstances. A police officer who in good faith and a reasonably prudent manner provides emergency care and aid at the scene of an emergency, in the absence of a duty so requiring, would be immune from liability provided that he renders such care at the scene of an emergency outside of a place with proper emergency equipment and without the objection of the injured person. See AGO 074-38 in which this office, noting that the state agency had no legal duty to provide needed care or first aid to an injured visitor to a correctional institution, concluded that in the event employees of the Division of Corrections render emergency care in a reasonably prudent manner to a visitor injured on the grounds of a correctional institution, they are immune from liability under s. 768.13, F. S., when the treatment is provided outside of a hospital, doctor's office, or other place having proper medical equipment and is given without the objection of the injured person.
In light of the foregoing considerations, I would recommend that, with respect to the above-mentioned common law duties of the police department and its police officers, the city survey and examine its liability insurance programs and negotiate the appropriate coverage with the city's insurance carriers for the acts of its police department and officers in rendering such emergency aid.
Prepared by: Joslyn Wilson, Assistant Attorney General