513 So.2d 238 (1987)
Susan A. CURTIS, Appellant,
v.
BULLDOG LEASING COMPANY, INC., the City of Boca Raton, Carriers Insurance Company, Crawford Catia, Heavy Machinery Tool Transport, Inc. and Suwannee Transfer Company, Inc., Appellees.
No. 85-1432.
District Court of Appeal of Florida, Fourth District.
September 30, 1987.
Steven P. Cullen of Law Offices of Hoadley and Gavigan, P.A., West Palm Beach, for appellant.
Keith R. Pallo of Adams, Coogler, Watson & Merkel, P.A., West Palm Beach, for appellee-The City of Boca Raton.
Joseph H. Lowe of Marlow, Shofi, Smith, Connell, DeMahy & Valerius, Miami, for appellees.
LETTS, Judge.
The trial court granted a final summary judgment in favor of a municipality, sued because one of its off-duty officers, outside of his jurisdiction, stopped at an accident scene and allegedly carelessly caused a second accident. We affirm.
The off-duty officer was on his way to work, in uniform, when he gratuitously stopped at an accident scene outside of his jurisdiction to inquire if anyone was hurt. While doing so, he radioed his own municipal police department to request that they in turn call the Florida Highway Patrol to *239 send a trooper to investigate the accident. While the off-duty officer was still at the scene, the driver of the tractor-trailer, involved in the crash, asked if his vehicle was parked far enough off the road or whether it should be moved. To this, the off-duty officer responded that he should not move it "until the highway patrolman gets here because I'm not investigating the accident."
As events unfolded, the Florida Highway Patrol arrived and very shortly after that, a second accident occurred when the plaintiff/appellant's car collided with the parked tractor-trailer allegedly partially blocking traffic.
The appellant compares this controversy to Department of Highway Safety v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986), where a driver, involved in an accident, was standing in the road reciting her version of it to an investigating officer when she was struck by a pick-up truck and injured. In that case, the State claimed sovereign immunity under Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985). However, the Third District pointed out that once the trooper undertook to "secure" the accident scene, he was required to use reasonable care and was performing a specific operational level function, not a discretionary one. Therefore, in accordance with Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), the State was not immune from suit.
Sub judice, the facts vary considerably from Kropff. First of all, the policeman in Kropff was on duty investigating an accident within his jurisdiction. Second, in the line of duty, he undertook to secure the scene and direct traffic, allegedly parking his police cruiser in a negligent manner. By contrast, the record before us indisputably provides that the policeman was off-duty, out of his jurisdiction and in his private station wagon. His actions were those of a Good Samaritan and not in line with his municipal duties as a police officer, his uniform notwithstanding.
The statute waiving sovereign immunity specifically provides that a waiver of immunity occurs only if the employee is "acting within the scope of his office or employment" Section 768.28(1), Florida Statutes (1985). It is true that an off-duty policeman might be within the scope of his employment because of actions taken within his jurisdiction. See Garner v. Saunders, 281 So.2d 392 (Fla. 2d DCA 1973). Likewise, an on-duty policeman might be held accountable for actions taken outside his jurisdiction. However, under the undisputed facts of this case, we cannot hold that this off-duty policeman, outside of his jurisdiction, acted within the scope of his employment. As a consequence, he did not waive the immunity of his sovereign. See Rabideau v. State, 391 So.2d 283 (Fla. 1st DCA 1980), affirmed, 409 So.2d 1045 (Fla. 1982).
AFFIRMED.
GUNTHER, J., concurs.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Judge, dissenting.
Because my perception of some of the facts is different from that of the majority, my perception of the inferences and conclusions to be drawn therefrom is also different.
Appellees accepted the statement of facts found in appellant's main brief, with one addition to which I shall later refer. Those accepted facts, with only the record citations omitted, were as follows:
On or about July 27, 1982, while traveling on Interstate 95 in Boca Raton, the Plaintiff, SUSAN A. CURTIS, was involved in an automobile/truck accident. A tractor-trailer owned by BULLDOG LEASING COMPANY, INC., had been involved in a previous accident several minutes before the time that the Plaintiff's vehicle impacted with the truck. At the time of impact, the tractor-trailer truck was stopped partially in the fast lane when the Plaintiff encountered it and struck the rear of it. As she was traveling at approximately 55 mph. At the time of impact, she sustained multiple and serious personal injuries. The *240 Plaintiff sustained a massive amount of internal organ damage and scarring as a result of her injuries.
SERGEANT CLARENCE QUINN, a Boca Raton Police Officer, was the first officer on the scene. Sergeant Quinn was operating his personal vehicle at the time. At the time Sergeant Quinn stopped at the accident scene, he was dressed in his police uniform and was on his way to work. Sergeant Quinn basically took over control of the accident scene at that time and began speaking to other witnesses. It was Sergeant Quinn who called for additional help and requested Boca Raton dispatch to notify the Highway Patrol. At that time, one of the parties to the first accident indicated that she had to leave the scene and Sergeant Quinn took her name for reporting purposes. There were no other law enforcement officers at the scene initially, and it is fairly apparent that Sergeant Quinn was in control of the scene. By this time, Sergeant Quinn was actively involved in the management of the accident scene and was taking affirmative steps in this regard.
Of critical significance is a conversation which officer Quinn had with the driver of the parked truck. This conversation [was] as follows: And he asked me, "is my truck far enough off the road or should I move it?" I said, "it seemed to be okay, wait until the highway patrolman gets here, because I'm not investigating the accident." At that time traffic became heavier. It was after Sergeant Quinn actively told the truck driver not to move the truck that the Plaintiff, SUSAN A. CURTIS, encountered the stopped vehicle and the impact occurred.
Appellees added the following fact, contained in the affidavit of Crawford Catia, the driver of the truck:
3. That I asked Sgt. Quinn whether my vehicle was properly parked and was told by Sgt. Quinn that it was and that I should not move it until the Highway Patrol came.
The fact which appellees added is also the first sentence of a paragraph in the officer's deposition before the trial court at the time of summary judgment. It and subsequent paragraphs reflect further involvement of Boca Raton:
A. And he asked me, "Is my truck far enough off the road, or should I move it?" I said, "It seemed to be okay, wait until the Highway Patrolman gets here, because I'm not investigating the accident." At that time traffic became heavier. I again got my radio, notified the Station to send a unit, a North Sector Unit, which is north of 20th Street, north of where we were to take the exit off I-95, come onto I-95 and attempt to move traffic to the west. I was telling him to block off the east lane of I-95 southbound.
Q. Which would have been the lane, as I understand, where part of the little yellow truck was still sticking out in, and as you indicated, part of the larger truck with the big cement things on would have been in?
A. Yes.
Q. Do you know if there were any Police, Highway Patrolmen or anyone stationed north of you to do what you had directed?
A. Yes.
Q. You know that?
A. I know that.
Q. How do you know that, Sergeant? Let me rephrase that. Do you know if they were there prior to Miss Curtis running into the back of this truck?
A. Yes.
Q. How do you know that?
A. Because they were there before the Highway Patrolmen arrived, and the Highway Patrolmen was on the scene when Miss Curtis ran into the back of the truck.
Q. Did you all have radio communication?
A. Yes. I don't know what Unit it were. He called me back and said they were not moving traffic enough, I need another unit. At that time a unit came on the entrance ramp of I-95 and Glades *241 Road heading north. And this unit was Officer Earhart. At that time Trooper Griffin arrived.
I do not picture the uniformed officer as a good Samaritan but as an off duty officer doing what he thought necessary while outside of his jurisdiction. My conclusion is that a jury should be the trier of fact to conclude whether the officer was negligent. The evidence reveals that the officer did a great deal to remedy the situation. A jury may conclude that he not only did all he should have, but that he also deserves thanks and commendation for doing so much single-handedly. On the other hand, a jury may conclude that if the vehicles were going to remain where they were, a reasonable person  having undertaken to effect their nonremoval  would have done something to direct traffic away from the obstructions. Perhaps the jury would perceive other facts and reach other conclusions not discussed by the majority or me. In my view, they should have been given the opportunity; and it was error not to do so.