Mr. Michael A. Berg Chairman Florida Criminal Justice Standards and Training Commission Post Office Box 1489 Tallahassee, Florida 32302
Dear Mr. Berg:
You have asked for my opinion on the following questions:
 1. Does a law enforcement officer have a legal duty to provide aid to ill, injured, and distressed persons, who are not in police custody, during an emergency?
 a. If yes, are the provisions of s. 768.13, F.S., as amended by Ch. 89-71, Laws of Florida, the Good Samaritan Act, applicable to officers acting within the scope of their employment?
b. If no, is s. 768.13, F.S., supra, applicable?
 2. Is a police officer protected from liability by the "Good Samaritan Act" if rendering emergency aid to persons not in police custody while off-duty?
 3. Is a correctional officer protected from liability by the Good Samaritan Act if rendering emergency aid to persons not in custody while off-duty?
 4. What standard of care is required of law enforcement and correctional officers rendering emergency aid within the scope of their employment? While off-duty?
 5. What are the limits of liability for an officer, a supervisor, an employing agency, and the officer's first responder instructor if the emergency aid rendered is less than the established standard of care?
In sum:
 1. and 2. A law enforcement officer, including a police officer, has a legal duty to provide aid to ill, injured, and distressed persons who are not in police custody during an emergency whether the law enforcement officer is on-duty or acting in a law enforcement capacity off-duty. Thus, the Good Samaritan Act does not apply to such officers.
 3. A correctional officer is not a peace officer and, therefore, does not have a legal duty to provide aid to ill, injured, and distressed persons. As a volunteer, a correctional officer would be covered under the Good Samaritan Act to the extent provided therein from liability for civil damages as a result of such care or treatment.
 4. The standard of care required of law enforcement and correctional officers rendering emergency aid whether on-duty or off-duty is the same: to render such competence and skill as he or she possesses.
 5. A law enforcement officer rendering emergency aid to ill, injured, or distressed persons on-duty or acting in a law enforcement capacity while off-duty is acting within the scope of his or her employment. The liability of the officer and his or her employing agency would, therefore, be subject to the terms and limitations of s. 768.28, F.S.
 A correctional officer providing emergency aid acts as a volunteer and would be protected by the Good Samaritan Act. The provisions of s. 768.28, F.S. (1988 Supp.), would not apply because the correctional officer is acting outside the scope of his or her employment.
 I am not aware of, nor have you brought to my attention, a situation in which the supervisor or the first responder instructor of a law enforcement or correctional officer would be liable for the actions of an officer providing emergency assistance to an injured, ill, or distressed person.
You have asked that this office reconsider the conclusion expressed in AGO 78-140 that a municipal police officer has a common law duty to render aid to ill, injured, or distressed persons during an emergency. Your request is based on a change in the judicially created test to determine a governmental employer's liability under s. 768.28, F.S. (1988 Supp.), for the actions of its employee/agents. The holdings in these cases are based on the distinction between operational and planning level activities.[1]
While AGO 78-140 was rendered prior to the change in this area of the law expressed by The Florida Supreme Court in Commercial Carrier Corporation v. Indian River County,371 So.2d 1010 (Fla. 1979), the common law duty of a law enforcement officer as identified in AGO 78-140 continues to be viable, and, as discussed herein, appears to have been extended.
Your letter states that the relevant training required for basic certification as a law enforcement officer or correctional officer is the 40 hour First Responder Training Course developed by the U.S. Department of Transportation.
Questions One and Two
Your first and second questions are interrelated and will be answered together.
Florida's "Good Samaritan Act" provides in part that:
 Any person, including those licensed to practice medicine, who gratuitously and in good faith renders emergency care or treatment at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, without objection of the injured victim or victims thereof, shall not be held liable for any civil damages as a result of such care or treatment or as a result of any act or failure to act in providing or arranging further medical treatment where the person acts as an ordinary reasonably prudent man would have acted under the same or similar circumstances.[2]
 Generally, in the absence of a contractual, special professional, or trustee relationship or a statutory requirement, a person is not under a legal duty to assist or care for the injured when the injury is not due to the fault of the person sought to be charged.[3]
 The term "law enforcement officer" is defined in several statutory sections.[4] The most comprehensive definition is found in s. 943.10(1), F.S., which states that:
 "Law enforcement officer" means any person who is elected, appointed, or employed full time by any municipality or the state or any political subdivision thereof; who is vested with authority to bear arms and make arrests; and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state. This definition includes all certified supervisory and command personnel whose duties include, in whole or in part, the supervision, training, guidance, and management responsibilities of full-time law enforcement officers, part-time law enforcement officers, or auxiliary law enforcement officers but does not include support personnel employed by the employing agency.[5]
Thus, it does not appear that the Legislature has distinguished between municipal police officers and law enforcement officers in general and the statutory duties and responsibilities, as well as the training, of all law enforcement officers are comparable.
In AGO 78-140 this office considered a Florida appellate court holding that a sheriff's officer is charged with the common law duty to render aid in emergencies to the ill, the injured, or the distressed, and concluded that in view of this holding municipal police officers are under a legal duty to provide such aid.
In Webster v. State,[6] the district court held that the right of officers of the sheriff's department to enter and to investigate in an emergency situation, without an accompanying intent to seize or arrest, "is inherent in the very nature of their duties as peace officers and derives from the common law." Thus, no search warrant was required to legalize an entry by police for the purpose of rendering aid to an injured or distressed person, "their duty certainly being to effect a rescue or to render aid to someone whom they had reasonable belief was in dire peril." The Webster court declared that it is part of the nature and duty of a police officer, derived from the common law duties of a peace officer, to render aid in emergency situations. Subsequent Florida court decisions have upheld warrantless searches and seizures based on this common law duty of police officers.[7]
A "peace officer" is generally defined to "include[s] sheriffs and their deputies, constables, marshals, members of the police force of cities, and other officers whose duty is to enforce and preserve the public peace." (e.s.)[8]
Thus, the common law duty to render aid to an ill, injured, or distressed person would appear to apply to all law enforcement officers whose duty it is to enforce and preserve the public peace not just police or sheriff's officers.
However, the authority of a law enforcement officer is subject to territorial limitations.[9] As a general rule, the authority of a law enforcement officer is coextensive with the boundaries of his employing agency and, when acting outside his or her jurisdiction, a law enforcement officer possesses no more authority to act than a private citizen.[10]
Thus, as the power of a law enforcement officer to act as a peace officer is coextensive with his or her territorial jurisdiction, the common law duty of such officer to render aid in emergency situations would also be subject to such limitations and a law enforcement officer would act as a private citizen otherwise.
At the discretion of their superior officers, all certified law enforcement officers have the right to carry, on or about their persons, concealed firearms, during off-duty hours[11] and may perform the same law enforcement functions that they normally perform during duty hours, utilizing their weapons in a manner which is reasonably expected of on-duty officers in similar situations.[12]
The officers specified in s. 790.052(1), F.S., may act as peace officers while off-duty and perform law enforcement functions. Therefore, these officers, although off-duty, would continue to be subject to the common law duty to render aid which applies to an on-duty officer to the extent they are performing law enforcement functions.[13]
Because a law enforcement officer is under a common law duty to render aid while on-duty and when acting in a law enforcement capacity while off-duty, the provisions of s. 768.13, F.S. (1988 Supp.), Florida's Good Samaritan Act, would not be applicable.[14]
Question Three
A correctional officer is defined as:
 [A]ny person who is appointed or employed full time by the state or any political subdivision thereof, or by any private entity which has contracted with the state or county, and whose primary responsibility is the supervision, protection, care, custody, and control, or investigation, of inmates within a correctional institution; however, the term "correctional officer" does not include any secretarial, clerical, or professionally trained personnel.[15]
Because the duties and responsibilities of a correctional officer are directed to the supervision, protection, and control of inmates within the correctional system of this state rather than the general public, I cannot conclude that such officers are under the common law duty to aid the injured, ill, or distressed in an emergency as are law enforcement officers.[16]
Thus, as a correctional officer is not under a common law duty to render aid in emergencies to ill, injured, or distressed persons, he or she acts as a volunteer outside the scope of employment when rendering such aid off-duty.[17] Pursuant to the Good Samaritan Act, if a correctional officer provides emergency care and aid in good faith and in a reasonably prudent manner, he or she would be immune from liability provided that such care is rendered at the scene of an emergency outside of a place with proper emergency equipment and without the objection of the victim.
Question Four
I am aware of, and you have called to my attention, no Florida case law which prescribes a standard of care to be used by law enforcement or correctional officers rendering emergency aid. However, the following general comments may be of assistance to you.
The Good Samaritan Act prescribes as the standard of care for purposes of that statute the responsibility to "act[s] as an ordinary reasonably prudent man would have acted under the same or similar circumstances."[18]
General authority suggests that the duty of one who voluntarily undertakes to care for and assist an ill or injured person is the same as that of one who is legally obligated to render such care or assistance.[19]
One who is under a duty to care for an ill or injured person is bound to use reasonable or ordinary care and to have a proper regard for the safety of such person, and is liable for further injury resulting from lack of proper care. The generally accepted rule is that one who provides relief or assistance to an ill, injured, or helpless person is under a legal obligation to use reasonable care and prudence in what he does. In such case the measure of the duty assumed is to exercise ordinary or common humanity, or to exercise with reasonable care such competence and skill as he possesses, or to exercise such care in the treatment of the injured person as the circumstances will allow.[20]
As discussed above, law enforcement officers are under a legal duty to render emergency aid to the injured, ill, or distressed whether such officers are on-duty or acting in a law enforcement capacity while off-duty. Thus, a law enforcement officer who renders emergency assistance to an injured, ill, or distressed person must exercise with reasonable care such competence and skill as he possesses, i.e., such skill as a person with 40 hours of "first responder training" would possess.
A correctional officer rendering aid in an emergency situation would be held to the same duty of care, i.e., commensurate with the competence and skill he or she possesses, but such officer acts as a volunteer outside the scope of his or her employment when rendering such aid.
Question Five
Section 768.28(1), F.S. (1988 Supp.), provides in part that an action at law may be brought against the state and its agencies or subdivisions to recover damages in tort for injuries caused by the negligent acts of an employee acting within the scope of his or her employment, if a private person would be liable under the same circumstances. Since the actions of a law enforcement officer in rendering aid in emergencies would be within the scope of his or her employment, the agency employing the officer may be liable for the actions of its employee.[21] A law enforcement officer, however, would not be subject to personal liability in tort for any injuries or damages suffered as a result of any act or omission of action done within the scope of his employment or function unless he acted in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.[22] Any liability of an employing agency of a law enforcement officer would be limited to the monetary limits set forth in s. 768.28(5), F.S. (1988 Supp.), which are currently provided to be $100,000 for any claim or judgment by any one person or $200,000 for all claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence.[23]
A correctional officer, who is under no legal duty to render emergency aid, acts as a volunteer outside the scope of his or her employment when rendering such aid. Therefore, a correctional officer may be held personally liable for injuries resulting from his actions or omission of action unless he is held immune under the terms of the Good Samaritan Act. [24] A correctional officer who in good faith and in a reasonably prudent manner provides care and aid at the scene of an emergency, without any duty to do so, would be immune from liability provided that he or she renders such care outside of a place with proper emergency equipment and without the objection of the injured person.[25]
However, the employing agency would not be liable pursuant to s.768.28, F.S. (1988 Supp.), for the torts or negligence of a correctional officer under such circumstances as the officer is not acting within the scope of his or her employment.
I am not aware of, nor have you related, any situation in which the supervisor of either a law enforcement officer or correctional officer or the first responder instructor of such officer would be held personally liable for the actions of an officer in providing emergency aid.
Sincerely,
Robert A. Butterworth Attorney General
(gh)
[1] Everton v. Willard, 468 So.2d 936 (Fla. 1985) (relating to the discretionary judgmental decision of making an arrest under the police power of a governmental entity); Rodriguez v. City of Cape Coral, 451 So.2d 513 (2 D.C.A.Fla., 1984), approved (468 So.2d 963) (Fla. 1985) (neither a city nor a city police officer may be held liable for the exercise of discretion in not taking an intoxicated person into protective custody under s. 396.072(1), F.S. [1977]; Department of Health and Rehabilitative Services v. Yamuni,529 So.2d 258 (Fla. 1988) (wherein the Court considered the distinction between operational and planning level activity in regard to actions of HRS case workers investigating and responding to reports of child abuse pursuant to Ch. 39, F.S.).
[2] Section 768.13(2)(a), F.S. (1988 Supp.).
[3] See, 65 C.J.S. Negligence ss. 4(4), 4(9) (duty, breach of which may constitute negligence, must be a legal duty); 63(104), and 63(107). See also, Modlin v. City of Miami Beach, 201 So.2d 70
(Fla. 1967) (fundamental element of actionable negligence is the existence of a duty owed by person charged with negligence to person injured); Drady v. Hillsborough County Aviation Authority,193 So.2d 201 (2 D.C.A.Fla., 1966) (negligence is a breach of a legal duty).
[4] See, ss. 112.531, 316.1906, and 943.10, F.S.
[5] Compare, ss. 316.1906(1)(d)1., and 112.531(1), F.S., defining "law enforcement officers."
[6] Webster v. State, 201 So.2d 789, 792 (4 D.C.A.Fla., 1967).
[7] See, State v. Moses, 480 So.2d 146, 148 (2 D.C.A.Fla., 1985) ("[Officer] was responding to an emergency, fulfilling a function stemming from the common law role of police as `peace officers' "); and Campbell v. State, 477 So.2d 1068 (2 D.C.A.Fla., 1985).
[8] Black's Law Dictionary 1287 (rev. 4th ed. 1968).
[9] See generally, 40 Fla.Jur.2d Police, Sheriffs, and Constables s. 118 (municipal police officers); 80 C.J.S. Sheriffs and Constables s. 36 (sheriffs).
[10] See, AGO 71-72; State v. Schuyler, 390 So.2d 458 (3 D.C.A.Fla., 1980) (An off-duty municipal police officer outside his jurisdiction has no right of arrest other than as a private citizen. A private person has a common law right to arrest a person who commits a felony in his presence, or to arrest a person where a felony has been committed, and where the arresting citizen has probable cause to believe, and does believe, the person arrested to be guilty.) Cf., ss. 901.18 and 901.25, F.S., which specifically authorize a municipal police officer to exercise police powers outside the territorial limits of his municipality under specified circumstances such as fresh pursuit or when summoned by another officer.
[11] Law enforcement and correctional officers as defined in s.943.10(1), (2), (6), (7), (8), or (9), F.S., are included within the scope of this statute. Thus, law enforcement officers, correctional officers, and such officers as are auxiliary or part-time officers are authorized to carry concealed firearms during off-duty hours. Compare, Garner v. Saunders, 281 So.2d 392
(2 D.C.A.Fla., 1973) (in action against city and its insurers for injuries sustained by plaintiff when he was shot by a policeman who had completed his normal daily tour of duty and who was required by city regulations to be on duty at all times and to always be in possession of a firearm, issue of material fact existed as to whether policeman was acting within scope of his employment).
[12] Section 790.052(1), F.S.
[13] Cf., Minard v. Department of Highway Safety and Motor Vehicles, 418 So.2d 288, 289 (3 D.C.A.Fla., 1982), wherein the court held that an off-duty state trooper had no duty to stop the car of a hit-and-run driver when the driver of the car had done nothing that would have caused the highway patrolman to stop the car had he been on-duty. While the court stated that the off-duty officer was not obligated to follow the car of the hit-and-run driver, it stated that "in fact, his responsibility was to render aid to the injured [victim]. . . ." (e.s.) The state trooper was off-duty at the time, driving his private car and was dressed in civilian clothes; compare, Curtis v. Bulldog Leasing Company, Inc., 513 So.2d 238 (4 D.C.A.Fla., 1987) (off-duty municipal police officer who was outside his jurisdiction and on his way to work when he observed accident, who stopped to inquire if anyone was hurt, and who remained on the scene pending arrival of highway patrol was acting as a Good Samaritan and not within the scope of his employment for purposes of s. 768.28[1], F.S.).
[14] See, 81A C.J.S. States s. 126(c) (a "good samaritan" statute exempting an individual from liability for negligence in attempted rescue does not protect a state officer who is under a duty to assist person in need of care.)
[15] Section 943.10(2), F.S. And see, s. 112.531(2), F.S., which defines "Correctional Officer" for purposes of the Law Enforcement Officers' and Correctional Officers' Bill of Rights.
[16] Cf., AGO 74-38 (Employees of the Division of Corrections who render emergency care in a reasonably prudent manner to a visitor injured on institutional grounds are immune from civil liability where treatment is provided outside of a hospital, doctor's office, or other place having proper medical equipment and without objection by the injured victim.)
[17] This is not to imply that a correctional officer may not be under a constitutional or statutory duty to render aid in emergencies to ill, injured, or distressed inmates while on-duty.
[18] Section 768.13(2)(a), F.S. (1988 Supp.).
[19] See generally, 65 C.J.S. Negligence s. 63(107).
[20] Id.
[21] See, AGO 78-140 wherein the issue of liability of a municipality for the actions of a police officer who renders assistance in an emergency is discussed.
[22] Section 768.28(9), F.S. (1988 Supp.).
[23] Section 768.28(5), F.S. (1988 Supp.).
[24] Cf., AGO 78-140.
[25] See, Botte v. Pomeroy, 438 So.2d 544 (4 D.C.A.Fla., 1983), rev. den., 450 So.2d 488 (Fla. 1984), app. after remand,497 So.2d 1275 (4 D.C.A.Fla., 1986), rev. den., 508 So.2d 15 (Fla. 1987), in which the appellate court discusses the necessity of consent of the injured person to assistance when the rescuer is using the Good Samaritan Act as a defense against a negligence action.