James B. Creel, P. J.
Informations charging James McErlean and Gerhard M. Callahan, Jr., with violations of the Narcotics Law (Public Health Law, § 3305; Penal Law, §§ 1751-a, 1747-d) and Gerhard M. Callahan, Jr., and Salvatore Collucci with unlawful entry of a building (Penal Law, § 405), were by stipulation tried together. Also by stipulation, and to expedite the trial of these long-pending informations, it was agreed that during the trial, the court would hear defendants’ motions to suppress evidence allegedly obtained by an illegal search and seizure. At the conclusion of the trial decisions were reserved on motions to suppress and to dismiss, and briefs were requested.
The arguments of defense counsel in support of these motions bring into sharp question the propriety of certain patrol and prearrest crime prevention practices of the New York City Police Department, it being strongly urged that such practices herein violated basic constitutionally protected civil rights of these defendants. (U. S. Const., 4th Amdt.; Mapp v. Ohio, 367 U. S. 643.) It is the contention of the defense that the Fourth Amendment is such an absolute protection of defendant’s rights as to render “ poison ” and inadmissible all evidence secured by police officers herein, during their performance of patrol and crime prevention duties.
The following facts were developed upon the hearing and the trial: On the evening of March 7,1962, acting upon a report, relayed to the police officers on radio patrol, that a burglary might be in progress at a pet supply shop at 43-01 Queens Boulevard, uniformed patrolman Crist and Youth Squad plainclothesman Barry immediately proceeded to these premises. They observed that the lights were turned on in the back of pet supply store, where the patrolman knew lights were not usually kept burning at night. They looked through the window but clear view of the rear of this store was obstructed by a partition of shelves. The door was locked and they knocked upon the door, having first stationed other police officers at the rear doors and windows. They observed from behind the partition of the rear of the store, the head of the defendant Callahan, a young man of 20 years of age, protruded from behind the partition, looking in their direction, and then withdrawn. They continued knocking and the defendant Callahan and another young man O’Donnell, whose case has been disposed of hereto *636 fore, came to the door and opened it. The patrolman entered and proceeded to the rear of the store, during which time they observed the defendant McErlean climb up the shelved partition and place something on the top thereof. At the back of the store, behind the partition, they found four more youths, including the defendants McErlean and Collucci. In response to the question as to what the said youths were doing in the pet shop at this hour of the night, the defendants each stated that they were playing a game of cards. No card tables or chairs were present. The physical condition of O’Donnell attracted the particular attention of the patrolmen and caused them to question him as to his recent use of narcotics. O’Donnell’s arm was examined and a blood spot and other physical observation gave indication of a very recent hypodermic injection of heroin. The shelves which defendant McErlean had been observed to climb were examined and on the top thereof were found a hypodermic needle, eyedropper syringe, a spoon and a bottle-cap equipment, that which is referred to by users as a “ set of works ”. The arms of each of the defendants were then examined and those of the defendants McErlean and Callahan gave indication of very recent hypodermic injections, but the arms of the defendant Collucci were unmarked. The immediate area was searched and behind a box where each of these defendants had been standing, they found a number of glassine envelopes, some containing a powder now known to be heroin, and some empty envelopes. Each of the defendants, when first observed, was standing within a distance of seven feet from the places when the “works” and the glassine envelopes were found. The defendants McErlean and Callahan were arrested for narcotic charges, and the defendant Collucci was arrested for unlawful entry. Later that night in the station house, admissions were made by the defendants McErlean and Callahan as to the purchase of the glassine bags of heroin and as to their use of hypodermic shots administered in the pet supply store immediately prior to the arrival of the patrolmen. The defendant Collucci made no admissions but the uncontroverted testimony established that this defendant had entered and been present upon the premises for a period of approximately 15 minutes while shots of narcotics were taken by others.
The defendant Collucci and all the other youths had been admitted to the pet shop by 0 ’Donnell, an employee of the shop, who had been in possession with a key thereto, but who had exceeded his authority and acted contrary to instructions in unlocking the door and in permitting it to be used by the defendants. These latter facts, as well as that no permission for the *637 entry or use of these premises had been given to anyone were established by the uncontroverted testimony of the proprietor-owner of the pet supply shop.
It may properly be judicially noted by this Bench, which is close to the problems of the people, that the facts of this case took place in a county of the City of New York, which until recent years had been almost entirely free of narcotic traffic, and in which there is presently being waged a particularly intense battle of wits between the so-called pushers and the police relating to the efforts of the former to introduce narcotic addiction among the youth of Queens County.
At the very outset, attention must be given to the contention of defense counsel herein that the Fourth Amendment to the Federal Constitution was enacted to curb the crime prevention and investigation practices of police departments. This is a contention which is ever-increasingly being urged by the criminal Bar generally. Historically, this contention is untrue and entirely incorrect. The Fourth Amendment was enacted in 1791; police departments, as we know them, did not come into existence until a much later date. New York City’s police were first established in 1844; San Francisco’s in 1850; Chicago’s in 1851; Boston’s and Philadelphia’s in 1854. The first police department was that of London, England, created in 1828 (Fosdick, American Police Systems, 1920, Century Company, N.Y.).
Police departments were created and have developed in metropolitan areas to meet a need of the citizenry for protection of not only life and property, but of the peace of the community and the social order. Police practices, procedures and systems have evolved over the years to more adequately meet the needs of the communities they serve.
Among these are the crime prevention activities of the police. The citizenry of such areas relies upon this police activity and regards it as a right of citizenship in such areas. There is as much need for crime preventive police activity in metropolitan areas as there is for fire prevention activity of fire departments, or for preventive medicine by health departments and the medical profession.
These crime preventive activities of metropolitan police have become formulated and established in the Rules and Regulations of Police Departments. For example, the Rules and Procedures of the Police Department of the City of New York, in the chapter on patrol, required the police officers in this case, Crist and Barry, ‘ ‘ to note where lights are ordinarily left burning at night and where not ” (rule 46.0h) “at night frequently *638 examine all doors on Ms post ” (rule 46.0 j) “investigate all suspicions circumstances, persons loitering about or acting suspiciously ” (rule 46.0k) “when circumstances warrant, a member of the force on patrol may stop any person for the purpose of identification and to satisfy himself that such person is on legitimate business ” (rule 47.0).
These are but characteristic of the prearrest crime prevention practices of the metropolitan police. And it is such prearrest crime prevention practices by police, which defense counsel herein insist are arbitrary infringements of absolute and constitutionally protected rights of the Fourth Amendment.
This contention that the Fourth Amendment is an absolute curb upon evidence obtained by police patrol and crime prevention activity is ever-increasingly heard from the criminal Bar, and even from the defense attorneys of the public-spirited Legal Aid Society and from some of my brethren upon this Bench.
Should the Fourth Amendment be interpreted and applied in such absolute and all-exclusory manner!
That which the Fourth Amendment condemns are the “unreasonable searches and seizures”. Are all police crime prevention activities and practices constitutionally unreasonable as defense contends because they subject a prospective defendant to prearrest police inquiries as to identity and reasons for unusual presence at certain places at certain times! The defense counsel contend that the police activities of Patrolmen Crist and Barry in this case are not only constitutionally unreasonable, but that they are so “ poisoned ” as to render all evidence obtained thereby constitutionally “ poison ” and inadmissible. The District Attorney contends that the actions of Patrolmen Crist and Barry, in investigating, entering, questioning and searching were not only proper but necessary patrol crime preventive police activity; that though they may have briefly preceded the arrest, that they were nontheless a proper and reasonable accompanying incident of that arrest; that the absence of warrants of arrest or search is legally excused by the necessity for almost instantaneous police action and that there was reasonable cause and necessity for prompt investigation, entry, interrogation and inquiry; and that both the searches and the arrests are in the light of all the circumstances, reasonable — constitutionally reasonable.
Thus, issue is squarely joined as to the propriety of patrol prearrest crime prevention police activity of Policemen Crist and Barry, and as to the constitutional reasonableness of prearrest police patrol crime prevention activity generally. None of the cases cited seem to have resolved this issue here presented.
*639 The Federal cases cited hy defense counsel are of but limited value in determining the propriety of the police activity in this case, or of crime prevention activity generally by police departments. They deal, not with law-enforcement agencies charged with the general duty of maintaining the peace or the law and order of the community by the means of patrols, but with those Federal enforcement agencies, which, whether Secret Service, Narcotics Agents, Postal Inspectors, Federal Bureau of Investigation Agents, Special Agents of the Treasury, etc., etc., have been assigned but a limited statutory mission of enforcing only certain assigned Federal criminal statutes, and none of whom are charged with the performance of any patrol duty to preserve the peace and order in the community. Hence, there probably has been no occasion for those courts to consider the problem of the constitutional reasonableness of patrol and crime prevention activity of police officers who are charged with the duty of patrolling and maintaining the peace and order of the community generally. Nor has the Mapp decision, without any guideposts, other than the application of the Fourth Amendment and the Federal case law of search and seizure, been of any great help in resolving the question here presented as to the constitutional reasonableness or unreasonableness of the patrol and crime prevention activities of police officers Crist and Barry in this case, or in resolving the perplexing problem as to the proper balance between liberty, with law and order, herein presented.
The application of the Fourth Amendment by the Mapp case to such prearrest police activity will serve a most useful purpose in curbing unreasonable abuse of police authority, but should courts apply that intended safeguard of rights of the citizenry, the community and the individual, so as to emansculate the effectiveness of all prearrest crime prevention activity of police departments, which also has as its purpose the protection of the citizenry collectively and the individual ?
There is no irreconcilable conflict between the Fourth Amendment’s prohibition upon unreasonable searches and seizures by all Government agencies, on the one hand, and on the other, the crime prevention prearrest practices of police forces charged with the duty of patrolling the community, preserving the peace and the maintenance of law and order therein; so long as such practices are confined to the reasonable bounds of requests for identification in suspicious circumstances, and inquiries as to what a person is doing in suspicious areas at suspicious times or places. If the rule of reasonableness is applied, as is indicated by the very language of the Fourth Amendment, there need be *640 no conflict between the guarantee of liberty by the former and the effort to maintain order and the peace by the latter. Does it serve any useful purpose to characterize as “ poison ” the crime prevention activities of Patrolmen Crist and Barry, as defense counsel has done herein? Those prearrest crime prevention activities; just as the Fourth Amendment, seek to promote the protection of the citizen and the citizenry; each is needed to attain the better society we seek; and whenever there are needs of the citizenry and those needs may appear to conflict, is it not the duty of the judiciary to seek reconciliation? And is not the maintenance of the delicate balance between liberty and lawful order a problem worthy of our highest judiciary?
If the principle of ‘ ‘ incident to an arrest ’ ’, which was first laid down in Federal District and Circuit Courts, and finally accepted by the United States Supreme Court in Agnello v. United States (269 U. S. 20 [1927]), permits searches and seizures after an arrest, why may not that principle be extended to hold legal such prearrest inquiries, searches and seizures as may be reasonable under the circumstances of the particular case ? The word ‘ ‘ incident ’ ’ has always included not only that which follows, but that which usually, in the normal course of events, accompanies or immediately precedes the main event.
To those who contend that the Fourth Amendment is a guarantee to the individual of absolute freedom and absolute liberty from any and all prearrest police supervision, both reasonable as well as unreasonable, it is suggested the granting of absolute rights to the individual untouched by any rules for the common good, tends toward the negation of government and the establishment of anarchy.
Accordingly, it is held, in hope of enlightenment from higher courts, that the prearrest patrol activities of Patrolmen Crist and Barry are reasonable and accompanying incidents of the arrests which they preceded; that such activities, the searches, the seizures, the arrests were constitutionally reasonable; that in the circumstances here presented such police activities were not in contravention of any constitutionally protected rights of any of these defendants; and the defendants’ motions to suppress are denied.
Upon the credible evidence thus received there can be no reasonable doubt of the guilt of the defendants McErlean and Callahan upon each of the narcotic charges of these informations. As to those charges against the defendants Callahan and Collucci for unlawful entry, the admissions of the former and the uncontroverted evidence as to the latter establish they both entered the building with the intent of committing a crime. *641 Accordingly each of the defendants is found guilty of the charges in these informations.
Investigations in aid of sentence are ordered for each of the defendants and the date for sentence is set forth for December 13,1962. Bail for each of the defendants is continued until that date.