STATE of Alaska, Petitioner,

v.

Michael MYERS, Lorraine Chilton, and Gary Herman, Respondents.

Michael MYERS, Lorraine Chilton, and Gary Herman, Cross-Petitioners,

v.

STATE of Alaska, Cross-Respondent.

Nos. 3931, 3932.

Supreme Court of Alaska.

Oct. 12, 1979.

---

Larry R. Weeks, Dist. Atty., Avrum M. Gross, Atty. Gen., Juneau, for petitioner and cross-respondent.

Walter Share, Asst. Public Defender, Juneau, Brian Shortell, Public Defender, Anchorage, for respondents and cross-petitioners.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

In this petition for review, the state seeks reversal of a superior court order granting the respondents' motion to suppress evidence. The evidence was discovered by the police as a result of a late-night warrantless

entry onto commercial premises for the sole purpose of securing the premises against burglary. We hold that the entry and subsequent limited search were police actions for which no warrant is required, and finding them otherwise reasonable within the meaning of the Constitution, we reverse.

At 2:30 a.m. on July 18, 1977, Juneau Police Officers Kalwara and Coyle were making routine security checks of commercial establishments in downtown Juneau. Their customary procedure was to systematically ensure that the entrances and exits to such premises were locked. Doors were very frequently found open, sometimes four to five on a given night. An open door would prompt a brief check to make sure no intruders were present, and the premises would be locked. Subsequently, the owner or manager of the establishment would be told of the discovery by police headquarters.

On the night in question, in accordance with their usual patrol route, the officers entered an alley onto which opened the exit doors of seven or eight businesses. A narrow corridor running perpendicular from the alley also contained several doors that the officers usually tested. This passageway was strewn with debris and was not visible from the street. Occasionally people had been found drinking there.

As they proceeded with their security check, the officers observed a light coming from the normally dark corridor. Walking back into the passageway, the officers discovered that the fire exit door of the Twentieth Century Theatre was propped open about twelve inches. They entered the building, walked several steps down a hallway to a door leading to the backstage area, heard voices coming from that area, and looked in.[1] They observed the respondents sitting on the floor, with cocaine paraphernalia scattered about. The respondents, one of whom was the manager of the theatre, were arrested and the evidence seized.

## I

The question presented is whether the warrantless entry[2] violated article I, section 14 of the Alaska Constitution and the fourth amendment of the Federal Constitution, which provide that:

The right of the people to be secure in their persons, houses [and other property],[3] papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

We have repeatedly confirmed out commitment to the principle that a warrantless search will be considered *per se* unreasonable unless it falls within a previously recognized exception to the warrant requirement, *see, e. g., Schultz v. State*, 593 P.2d 640, 642 (Alaska 1979), and, despite the state's contentions to the contrary, we are not persuaded that a security check of business premises falls within any of the previously enumerated categories.[4] However,

---

1. It is not clear from the record whether the door to the backstage area was opened by the officers or was already open.

2. The trial court found, and the respondents do not dispute, that the seizure of respondents and evidence would have been proper had the initial entry by the police been proper. The observation of respondents' activities provided probable cause to arrest; once justifiably within the backstage area, the officers could then seize the evidence that was in plain view. *See State v. Spietz*, 531 P.2d 521, 523 (Alaska 1975).

3. The phrase appearing in brackets appears only in the Alaska Constitution.

4. *See Schraff v. State*, 544 P.2d 834, 840–41 (Alaska 1975). To hold that "voluntary consent" or "emergency aid" existed here would significantly depart from the established meanings of those terms, *see, e. g., Erickson v. State*, 507 P.2d 508, 515 (Alaska 1973) (to be voluntary, consent "must be unequivocal, specific and intelligently given . . . ."); Mascolo, The Emergency Doctrine Exception to the Warrant Requirement under the Fourth Amendment, 22 Buff.L.R. 419 at 434 (1973) ("emergency aid" ordinarily requires "true necessity—that is, an imminent and substantial threat to life, health or property" (citations omitted)).

the search in question is of a kind that has rarely been challenged in the courts, and when challenged, has been found constitutional.[5] We are confronted, therefore, with a unique set of facts which require that we look, albeit with great caution, beyond the four corners of previously recognized exceptions to the principles that gave rise to them.[6] We have determined, for the reasons set forth below, that while subject to the fourth amendment's command that a search be reasonable, a routine business security check may, under certain circumstances, be conducted in the absence of a warrant.

■ There is no doubt, as previous cases and the particular language of the Alaska Constitution make clear,[7] that the Constitution protects an individual's reasonable and subjective expectation of privacy regarding commercial premises. *See, e. g., Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Schultz v. State,* 593 P.2d 640 (Alaska 1979). Expectations of privacy are not all of the same intensity, however. Both subjectively and in society's judgment as to what is reasona-

ble, distinctions may be made in the varying degrees of privacy retained in different places and objects.[8] *See Rakas v. Illinois,* 439 U.S. 128, 152–53, 99 S.Ct. 421, 435–36, 58 L.Ed.2d 387, 407–8 (1978); *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538, 549 (1977); *United States v. Reyes,* 595 F.2d 275, 279 (5th Cir. 1979); *United States v. Fluker,* 543 F.2d 709, 716 (9th Cir. 1976).[9] When a police intrusion takes place in a context in which only a "diminished expectation of privacy" exists, such a search must be "reasonable" within the meaning of the Constitution, but may not necessarily be subject to the warrant requirement. *See, e. g., United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538, 549 (1977); *South Dakota v. Opperman,* 428 U.S. 364, 367–68, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976); *United States v. Martinez-Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116, 1130 (1976).[10] Accordingly, the fourth amendment neither compels us to ignore the profound differences distinguishing one's home from one's business, nor compels us to presume that people desire or expect the police to conduct them-

---

5. We have found only three cases involving searches of commercial establishments on facts similar to those here. In *People v. Parra,* 30 Cal.App.3d 729, 106 Cal.Rptr. 531, *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973), the police found the door of a florist shop ajar at night. They entered "to attempt to secure the store for the owner of the business as best we could, contact him and find out if . . . everything was all right, if anything had been taken . . . ." *Id.* at 533. In attempting to ascertain the owner's identity, heroin was discovered. The court held the search and seizure valid, finding the entry privileged, insofar as its sole purpose was the preservation of the owner's property. *Id. Accord, State v. Bell,* 249 So.2d 748 (Fla.Dist. Ct.App. 1971) (emphasizing commercial nature of premises, and need for nighttime security checks); *People v. McErlean,* 38 Misc.2d 634, 235 N.Y.S.2d 657 (1962).

6. *See United States v. Chadwick,* 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2483–84, 53 L.Ed.2d 538, 548–49 (1977); *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968); *United States v. Edwards,* 498 F.2d 496, 498 (2nd Cir. 1974). *See also Erickson v. State,* 507 P.2d 508, 515 (Alaska 1973).

7. *See* note 3 *supra.*

8. Thus, we stated in *Nathanson v. State,* 554 P.2d 456, 458 (Alaska 1976), that "the content and incidence of this . . . [fourth amendment] protection must be shaped by the context in which it is asserted."

9. *See also Clark v. State,* 574 P.2d 1261, 1265 (Alaska 1978) ("the expectation of privacy inherent in locked luggage is incomparably higher than in the container involved here, a paper bag"); *People v. Westmoreland,* 58 Cal.App.3d 32, 129 Cal.Rptr. 554 (1976) (lesser expectation of privacy in backyard of residence).

10. *See also People v. Westmoreland,* 58 Cal. App.3d 32, 129 Cal.Rptr. 554 (1976); *People v. Little,* 33 Cal.App.3d 552, 109 Cal.Rptr. 196 (1973). *See generally* Greenberg, *The Balance of Interests Theory and the Fourth Amendment: A Selective Analysis of Supreme Court Action Since* Camara *and* See, 61 Cal.L.Rev. 1011, 1012–14 (1974); LaFave, *"Street Encounters" and the Constitution,* 67 Mich.L.Rev. 39, 55–59 (1968).

selves in identical fashion with respect to each.[11]

The search challenged here occurred at 2:30 a.m., an hour at which the privacy of one's conduct in one's home deserves and receives the fullest protection afforded by the Constitution. *See, e. g., Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514, 1519 (1958); *United States v. Searp,* 586 F.2d 1117, 1124 (6th Cir. 1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979). *See also State v. Shelton,* 554 P.2d 404, 406 (Alaska 1976). With respect to a business, however, when the doors close, the owner has gone home, and night falls, the owner's interest is normally not the protection of private conduct; at such a time, when the property is most vulnerable to burglary, the security of the premises ordinarily becomes the paramount interest. It is only reasonable to assume that the vast majority of proprietors, particularly in urban areas where burglary is not uncommon,[12] subjectively expect and encourage the police to be vigilant in protecting business premises, and are aware that, when a normally deserted and locked building is discovered by the police to be unsecured, such vigilance may require trespasses that would not be tolerated in one's home.[13]

The "diminished expectation of privacy" shared by most proprietors in the foregoing context obviously cannot justify an unqualified rule permitting warrantless entries onto commercial premises. *See Michigan v. Tyler,* 436 U.S. 499, 505–06, 98 S.Ct. 1942, 1947–48, 56 L.Ed.2d 486, 495–96 (1978). Individual proprietors who, for any number of legitimate reasons, may not desire even the most cursory searches of their business premises at any time, are entitled to have their right to such privacy protected. *See Schultz v. State,* 593 P.2d 640, 642 (Alaska 1979). Nor can we ignore the possibility that personal effects may be subjected to scrutiny by police officers authorized only to secure the premises, without a prior evaluation of that risk being made by a neutral magistrate. *See Michigan v. Tyler,* 436 U.S. at 505, 98 S.Ct. at 1948, 56 L.Ed.2d at 496.

However, the traditional means supplied by the Constitution to ensure that protected rights are not infringed by otherwise reasonable intrusions, namely, the requirement that a search warrant first be obtained, is unavailing in the present case. The Constitution provides that "[n]o warrants shall issue, but upon probable cause," and it is conceded that security checks, including the one conducted here, are procedures to which the traditional concept of probable cause is inapposite, thus precluding the issuance of a constitutional warrant.[14] Though a warrant procedure based on less than probable cause has been approved for certain kinds of administrative searches,[15] the justifica-

11. For example, as we stated in *Howard v. State,* 583 P.2d 827, 836 n.23 (Alaska 1978): "Property which has been converted for commercial use . . . is entitled to less privacy protection under the federal Fourth Amendment than a purely private dwelling." *See Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 17 L.Ed.2d 312, 316 (1966).

12. Recent data compiled by the Alaska Criminal Justice Planning Agency show that the per capita incidence of non-residence burglaries in Juneau exceeds that of other population centers in Alaska. *See* 1978 Criminal Justice Plan, at 51.

13. Under the circumstances, we do not believe the respondents here, an employee of the theatre and two friends, could reasonably entertain an expectation of privacy contrary to that of the owner of the theatre.

14. *See Marshall v. Barlow's, Inc.,* 436 U.S. 307, 326–27, 98 S.Ct. 1816, 1826–28, 56 L.Ed.2d 305, 319–21 (1978) (Stevens, J., dissenting); T. Taylor, Two Studies in Constitutional Interpretation 41–47 (1969); Williamson, *The Supreme Court, Warrantless Searches, and Exigent Circumstances,* 31 Okla.L.Rev. 110, 112–115 (1978). *See also South Dakota v. Opperman,* 428 U.S. 364, 370 n.5, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1006 n.5 (1976); *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968); *United States v. Edwards,* 498 F.2d 496, 498 (2nd Cir. 1974).

15. Warrants based on general information may be issued to authorize "administrative searches conducted to enforce local building, health, or fire codes . . . ." *Michigan v. Tyler,* 436 U.S. 499, 506 n.5, 98 S.Ct. 1942, 1948 n.5, 56 L.Ed.2d 486, 496 n.5 (1978). *See, e. g., Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct.

tions for doing so in those cases are not present here. Whereas administrative searches are premeditated government actions involving ample time to procure a warrant, and often take place in foreseeable adversary circumstances in which a warrant is seen as a buffer of rationality,[16] security checks are undertaken on behalf of property owners, are responsive to immediate needs, and are required so often as to render the warrant procedure impractical.

To impose a warrant requirement on such searches, therefore, would be to foresake the substantial expectations of protection against burglary held by a large segment of the community. Such a result is unnecessary to protect the privacy rights potentially jeopardized by a rule legitimizing security checks. As the Supreme Court has declared with respect to the deleterious effect a warrant procedure might have on the statutory goals of certain administrative searches, "[t]he reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 321, 98 S.Ct. 1816, 1825, 56 L.Ed.2d 305, 317 (1978). Correspondingly, we believe that a narrowly drawn exception to the warrant requirement can effectively legitimize and protect, respectively, the countervailing interests drawn in question by security checks of business premises.

■ Accordingly, we hold that law enforcement personnel may enter commercial premises without a warrant only when, pursuant to a routine after-hours security check undertaken to protect the interests of the property owner, it is discovered that the security of the premises is in jeopardy, and only when there is no reason to believe that the owner would not consent to such an entry. In the context with which we are immediately concerned, locked premises must be taken as indicating that no warrantless entry is authorized. Any search

conducted incident to a legitimate entry must be brief and must be limited and necessary to the purpose of ensuring that no intruders are present on the premises. In addition, someone responsible for the premises must be informed, as soon as is practicable, of the protective measures taken.

II

■ The intrusion challenged in the instant case meets the criteria delineated above. It is undisputed that officers Kalwara and Coyle discovered the theatre's exit door ajar pursuant to a routine after-hours security check, entered the theatre for the sole purpose of securing the premises, and confined their search, which was brief and consisted only of ensuring that no intruders were present, to the legitimate purpose of the entry. Given that the theatre was normally dark at 2:30 a. m., that the light observed by the officers was visible only from an interior alley and not from the main public thoroughfare, and that the rear exit door had been deliberately propped open in a passageway previously frequented at that late hour only by persons seeking to conceal their activities, it was reasonable for the officers to believe that the security of the premises was in jeopardy. Finally, the officers had no reason, nor has any been adduced since, to believe that the theatre owner would not consent to their entry. On a prior occasion officers Kalwara and Coyle had found the theatre's same fire door open, had secured the premises, and had subsequently notified the owner of their action. While the record does not reveal the proprietor's precise response on that occasion, it is at least apparent that, on the basis of that experience, the officers felt encouraged to protect the property as they had in the past. We conclude, therefore, that the challenged search falls within the exception to the warrant requirement delineated in part I of this opinion.

---

1816, 1824, 320–21, 56 L.Ed.2d 305, 316 (1978); *Woods & Rohde, Inc. v. State*, 565 P.2d 138, 151 (Alaska 1977).

**16.** *See Camara v. Municipal Court*, 387 U.S. 523, 532–33, 87 S.Ct. 1727, 1732–33, 18 L.Ed.2d 930, 937 (1967); *Woods & Rohde*, 565 P.2d at 151.

Based on similar considerations we also find the officers' actions reasonable within the meaning of the Constitution. The respondents suggest that the officers' failure to attempt to contact the theatre owner prior to entering the building rendered the entry unreasonable. We disagree. The existence of one reasonable course of action does not render all alternative courses unreasonable. Here, based in part on the prior contact between the officers and the owner, and because, speaking generally, we cannot say that the delay incident to contacting the owner would not facilitate the escape of an intruder or increase the physical risk to the police, we deem the course chosen a reasonable one.

The order suppressing evidence is REVERSED.

RABINOWITZ, Justice, concurring.

On the particular facts of the case at bar, I conclude that the search of the movie theatre premises by Officers Kalwara and Coyle comes within the emergency aid exception to the warrant requirement. *See Schraff v. State*, 544 P.2d 834, 841 (Alaska 1975); *Stevens v. State*, 443 P.2d 600, 602 (Alaska 1968). Thus, I conclude that the superior court's order granting Myers' motion to suppress should be vacated.

The essential components of the emergency aid exception to the warrant requirement are aptly articulated by the court in *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y. S.2d 246, 248, 347 N.E.2d 607, 609, *cert. denied*, 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976):

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

In brief, I would expressly adopt the emergency aid exception as delineated in *Mitchell* and, on the facts relied upon by the majority, uphold the search in question.

BOOCHEVER, Chief Justice, dissenting.

I respectfully differ with the rationale and the result reached by the majority. If I understand the opinion correctly, it eventually disposes of this case based on an unstructured determination as to whether the search was reasonable. This approach has been referred to by one commentator as "the wild card of general reasonableness." [1]

1. *See* A. Amsterdam, Trial Manual for the Defense of Criminal Cases § 229 (3d ed. 1977). In able analysis, the author states:

The whole body of the [Supreme] Court's Fourth Amendment holdings plainly makes up a pattern that is far closer to the Frankfurter warrant-theory model than to the general-reasonableness model. Indeed, the Court has persistently spoken in search-and-seizure cases in the very language of the [*United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950)] dissent, describing the principle of the Fourth Amendment as a pervasive "rule that a search must rest upon a search warrant," *Rios v. United States*, 364 U.S. 253, 261 [, 80 S.Ct. 1431, 4 L.Ed.2d 1688] (1960), subject only to a few "jealously and carefully drawn" exceptions, *Jones v. United States*, 357 U.S. 493, 499 [, 78 S.Ct. 1253, 2 L.Ed.2d 1514] (1958). The typical formulation is "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 [, 88 S.Ct. 507, 19 L.Ed.2d 576] (1967).

The *Chimel* [*v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685] case, *supra*, overruled *Rabinowitz* on a related point and, while *Chimel* did not explicitly reject the "general reasonableness" theory, its approving quotation of the critical portions of Mr. Justice Frankfurter's *Rabinowitz* dissent (see 395 U.S. at 760–61 [, 89 S.Ct. 2034]) appears to relegate "general reasonableness" to the ash heap. However, "general reasonableness" language continues to be used, *e. g.*, *Wyman v. James*, 400 U.S. 309, 318 [, 91 S.Ct. 381, 27 L.Ed.2d 408] (1971), sometimes in confusing conjunction with warrant-theory language, see *Cady v. Dombrowski*, 413 U.S. 433, 439, 448 [, 93 S.Ct. 2523, 37 L.Ed.2d 706] (1973); and sporadic "general reasonableness" holdings still occur, of two sorts. Searches that are condemnable under the warrant theory have been sustained because,

It requires the police officer to make the initial determination as to the reasonableness of the contemplated action. Such a procedure has been recognized as justifying a "stop and frisk" search under *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968), and under similar circumstances we have adopted the rationale in *Coleman v. State*, 553 P.2d 40, 45 (Alaska 1976). It has not been previously used by this court to justify the search of a building.[2]

I disagree with the majority's conclusion that the search of the theatre was not unreasonable per se. "While a properly issued search warrant is not an absolute requirement under the fourth amendment, a search or seizure without a warrant is *per se* unreasonable. Once a search or a seizure has been executed without a warrant, the burden falls upon the state to prove by a preponderance of the evidence that one of the exceptions to the warrant requirement applies and will sustain the search as reasonable."[3]

Generally, the warrant requirement is interposed in order to

[provide] the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforce-

ment officer "engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Once a lawful search has begun, it is also far more likely that it will not exceed proper bounds when it is done pursuant to a judicial authorization "particularly describing the place to be searched and the persons or things to be seized." Further, a warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. *Camara v. Municipal Court*, 387 U.S. 523, 532, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).[4]

Not only does the majority opinion leave it to the officer on the beat to make an unguided determination of reasonableness, but the opinion requires the trial judge similarly to determine the "reasonableness" of the officer's actions. This, in my opinion, involves far too subjective a standard for determining exceptions to the warrant requirement and could lead to an eventual dismantlement of the protections afforded by the fourth amendment of the United States Constitution and the similar provision set forth in article I, section 14, of Alaska's Constitution.[5]

on all the facts and circumstances, they are found reasonable, *Cooper v. California*, 386 U.S. 58 [, 87 S.Ct. 788, 17 L.Ed.2d 730] (1967); *South Dakota v. Opperman*, 428 U.S. 364, 369–76 [, 96 S.Ct. 3092, 49 L.Ed.2d 1000] (1976); and searches that are sustainable under the warrant theory have been condemned because, on all the facts and circumstances, they are found unreasonable, *McDonald v. United States*, 335 U.S. 451 [, 69 S.Ct. 191, 93 L.Ed. 153] (1948); cf. *Roaden v. Kentucky*, 413 U.S. 496, 501–06 [, 93 S.Ct. 2796, 37 L.Ed.2d 757] (1973). It is therefore fair to describe the state of Fourth Amendment law as a game professedly played under general-reasonableness rules, actually played for the most part under warrant-theory rules, and subject, from time to time, to the wild card of general reasonableness turning up.
*Id.* (citations omitted).

2. *Schultz v. State*, 593 P.2d 640 (Alaska 1979), is not to the contrary. The exception relied on in that case was the "compelling need for official action and no time to secure a warrant." *Id.* at 642 (footnote omitted). A burning build-

ing fulfilled the requirement of "compelling need" in *Schultz.*

3. Feldman, *Search and Seizure in Alaska: A Comprehensive Review*, 7 U.C.L.A.-Alaska L.Rev. 75, 96–97 (1977) (footnotes omitted). See *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Zehrung v. State*, 569 P.2d 189, 192 (Alaska 1977), *modified on other grounds*, 573 P.2d 858 (Alaska 1978) (per curiam); *Schraff v. State*, 544 P.2d 834, 838 (Alaska 1975); *Erickson v. State*, 507 P.2d 508, 514 (Alaska 1973).

4. *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538, 547 (1977).

5. Alaska Const. art. I, § 14, provides:
*Searches and Seizures.* The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by

Since the search involved commercial premises, I agree that there was a lesser expectation of privacy on behalf of the owners and occupants.[6] The commercial character of a building, however, is not a talismanic factor which renders the fourth amendment meaningless. As the Supreme Court of the United States has recently stated:

> The decisions of this Court firmly establish that the Fourth Amendment extends beyond the paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of a crime. . . . The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943; *Marshall v. Barlow's, Inc.,* [436 U.S.] at 311–313, 98 S.Ct. 1816 [at 1820–1821], 56 L.Ed.2d 305.

*Michigan v. Tyler,* 436 U.S. 499, 504–05, 98 S.Ct. 1942, 1947, 56 L.Ed.2d 486, 495 (1978).

Moreover, in *Woods & Rohde, Inc. v. State, Department of Labor,* 565 P.2d 138, 150–51 (Alaska 1977), we held that article I, section 14 of the Alaska Constitution protects commercial or business premises against invasion of privacy and warrantless searches.[7] The right to privacy in business premises is of particular significance during periods when they are not opened to the general public. The propped-open theatre door may be of some significance in judging the owner's and occupants' subjective expectation of privacy.[8] Nevertheless, even under a general reasonableness analysis, any intrusion by police must be reasonable in light of other less-intrusive alternatives.[9]

## WARRANT–THEORY ANALYSIS

As we have stated in the past, the "polar star" in the field of search and seizure is that a warrantless search is "per se unreasonable" unless it falls within one of the defined exceptions to the warrant requirement.[10] In *Schraff v. State,* 544 P.2d 834,

---

oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.Const. Amend. IV states:

*Searches and seizures.*

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**6.** *Howard v. State,* 583 P.2d 827, 836 n. 23 (Alaska 1978).

**7.** Our holding in *Woods & Rohde* was also buttressed by the Alaska Const. art. I, § 22 which provides:

*Right of Privacy.* The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

565 P.2d at 150–51.

**8.** It would seem unlikely, however, that the door would be propped open if a burglary were in process. If, as the majority theorized, it might indicate a desire of burglars to return at a later time, there would be no present emergency.

**9.** Of further concern to me is the method in which the majority strikes the balance between the individual's right to be free from governmental intrusion and society's interest in preventing criminal activity. As the majority recognizes, what is at issue here is the *"individual's* reasonable and subjective expectation of privacy regarding commercial premises." *See* majority opinion at 242. Yet the majority never investigates the subjective expectation of privacy that these defendants may have had in the theatre premises, or whether such expectation is reasonable. Instead, the majority speculates that most theatre proprietors share a diminished expectation of privacy in theatre premises during nonbusiness hours and a heightened expectation that police will act to protect business property. This premise serves as a basis for concluding that the expectations of the vast majority of a limited class—business proprietors—may sometimes justify invasion of individual privacy rights. Whatever the expectations of the majority of theatre owners are, they are of little significance to examination of the individual theatre owner's subjective expectation of privacy, and are totally irrelevant to the inquiry into the privacy expectations of these defendants. Constitutional rights protect individuals regardless of the sentiments of a majority at a particular time.

**10.** *See Schraff v. State,* 544 P.2d 834, 838 (Alaska 1975); *Erickson v. State,* 507 P.2d 508, 514 (Alaska 1973). *See also Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967).

840–41 (Alaska 1975), we catalogued the possible exceptions as follows: (1) a search of abandoned property, (2) a search in hot pursuit of a fleeing felon, (3) a search of a movable vehicle, (4) an "inventory" search, (5) a stop and frisk search, (6) a search incident to an arrest, (7) a search with probable cause, to avoid destruction of a known seizable item, (8) a search pursuant to voluntary consent, and (9) an emergency aid search.

I recognize that this list of exceptions is not to be treated as though engraved in stone. The infinite variety of circumstances under which fourth amendment problems arise may well require additions to the list of exceptions. Such additions, however, must be defined narrowly and explicitly in order to minimize the use of unbridled judgment that the warrant requirement is designed to avoid. In my view, the majority opinion fails to afford the necessary guidance to police officers, and conveys the impression that they are free to apply to the best of their ability a standard of reasonableness based on a balance between the interests of the state and those of privacy of the individual.

I believe that a proper analysis requires us to look at the exceptions catalogued in *Schraff*. To be upheld, the search must be justified under one of those exceptions, or if new circumstances mandate, a clear definition of an additional exception should be set forth.

This search does not involve any of the first six listed exceptions. The "probable cause plus exigent circumstances" exception is not applicable because the state concedes that there was no probable cause to believe that a crime was being committed.[11] The state argues that this search fits within either the voluntary consent exception or the emergency aid exception. Additionally, the state argues that this was not a search because it fits within either the plain view or the open fields doctrine. Despite these contentions, it is clear that the only possible exception which may be relied on to justify the intrusion in this case is the "emergency aid exception."[12]

11. Even assuming that the state did not concede this point, I find that probable cause to believe a crime had been committed was lacking under the facts of this case. Finding an unlocked door was not unusual. In fact, the officer testified it was quite ordinary and there was no evidence that a substantial percentage of doors routinely found open were open as a result of criminal activity. Moreover, there was no indication of forced entry. The evidence does not support a finding that there was a reasonable basis for believing that criminal activity had been or was occurring. This finding distinguishes this case from others, such as *United States v. Estese*, 479 F.2d 1273 (6th Cir. 1973) (per curiam), in which the court upheld the warrantless entry into an apartment based on probable cause to believe that a burglary was being or had been committed recently. In *Estese*, the police received a call reporting a breaking and entering and, upon investigating the premises, discovered the door open and evidence that it had been pried open. The court validated the entry by police to search for the burglar. Similarly, in *State v. Campbell*, 15 Wash.App. 98, 547 P.2d 295 (1976), the court upheld as reasonable a warrantless entry into an apartment based upon the exigency rationale. A neighbor saw a burglary in progress, observed a fleeing suspect, and summoned the police. Upon arrival, the police talked to the eyewitness and discovered a broken apartment window and a wide-open apartment door. The police entered the apartment to investigate the recent crime, to look for participants, to search for evidence, and to aid any victims. Their observation and seizure of marijuana was upheld based upon the plain view doctrine.

12. The "plain view" doctrine is inapplicable because the state must first show that the officers observed the illegal activity from a place they had a right to be, *Anderson v. State*, 555 P.2d 251, 260 (Alaska 1976), which turns upon the lawfulness of the *entry* into the theatre. Similarly, the "open fields" doctrine is of no aid to the state. As applied to business premises, the open fields doctrine stands for the proposition that where a business is, by its nature, open to the public, a law enforcement official may enter the premises without committing a search. *Air Pollution Variance Bd. v. Western Alfalfa Corp.*, 416 U.S. 861, 865, 94 S.Ct. 2114, 2115, 40 L.Ed.2d 607, 611 (1974); *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898, 900 (1924); *People v. Punyko*, 9 Ill.App.3d 1052, 293 N.E.2d 672, 673–74 (1973). The open fields doctrine, however, cannot justify entry into a building during non-business hours via an entranceway not generally open to the public. *See People v. Ramsey*, 272 Cal.App.2d 302, 77 Cal.Rptr. 249, 254 (1969). Finally, the "implied consent" exception to the warrant requirement is inapplicable

The "emergency" or "necessity" exception to the warrant requirement has been recognized in Alaska.[13] The New York Court of Appeals explained the exception in *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y. S.2d 246, 347 N.E.2d 607, *cert. denied*, 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976):

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and *an immediate need for their assistance for the protection of life or property.*
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

383 N.Y.S.2d at 248, 347 N.E.2d at 609 (emphasis added). Although many courts in dictum have recognized that emergency exceptions allow the police to protect property,[14] few courts have applied the exception to such situations. Most decisions applying the emergency exception to the warrant requirement have concerned situations where aid is required to protect life.[15]

There are surprisingly few cases dealing with a police officer's right to enter a building in order to protect property under the emergency exception to the search warrant requirement, and none is factually on all fours with this case. California, however, has had some cases which afford guidance.

In *Jacobs v. Superior Court*, 36 Cal. App.3d 489, 111 Cal.Rptr. 449 (Cal.App. 1973), an officer's action of peeking through a small aperture was held to be unreasonable in light of alternative available courses of action. The officer, on routine patrol, passed a meat market and noticed an automobile parked in front. Also, a light was on in the market, although the business was closed. An hour later, the officer drove by again and saw a second car. These facts aroused the officer's concern for the safety of the building, so the officer called for assistance. When other officers arrived, they decided to approach the building without attempting to notify the owner, although they knew who he was. As they approached, they heard loud music and laughter. The blinds were drawn so that they could not see inside the building. But, by leaving the public right-of-way and standing in the planter area no more than a foot away from the window, the officer

---

because the state has failed to show a voluntary, unequivocal, specific and intelligent consent to this particular search. *See Erickson v. State*, 507 P.2d 508, 515 (Alaska 1973). Although the "responsible" did not object when, on prior occasions, officers had informed him that the door was found open, this cannot be construed as an authorization to enter the theatre should the door be found open in the future.

13. *See Schraff v. State*, 544 P.2d 834, 841 (Alaska 1975); *Stevens v. State*, 443 P.2d 600, 602 (Alaska 1968), *cert. denied*, 393 U.S. 1039, 89 S.Ct. 662, 21 L.Ed.2d 586 (1969). *See generally* Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment*, 22 Buffalo L.Rev. 419 (1973); Bacigal, *The Emergency Exception to the Fourth Amendment*, 9 U.Rich.L.Rev. 249 (1975).

14. *See People v. Roberts*, 47 Cal.2d 374, 303 P.2d 721, 723 (1956) (citations omitted), where the California Supreme Court stated:

> Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of

preserving life or property and reasonably appears to the actor to be necessary for that purpose.

15. *See Schraff v. State*, 544 P.2d 834, 841–44 (Alaska 1975), and cases cited therein; *Stevens v. State*, 443 P.2d 600, 602 (Alaska 1968). *See also United States v. Boyd*, 407 F.Supp. 693, 695 (S.D.N.Y.1976); *People v. Sutton*, 65 Cal. App.3d 341, 134 Cal.Rptr. 921, 925 (Cal.App. 1976); *Dawn O. v. Nutter*, 58 Cal.App.3d 160, 128 Cal.Rptr. 852, 853–54 (1976); *People v. Neth*, 5 Cal.App.3d 883, 86 Cal.Rptr. 12, 14–15 (1970); *Patrick v. State*, 227 A.2d 486, 489 (Del.1967); *Long v. State*, 310 So.2d 35, 36 (Fla.App.1975); *State v. Hetzko*, 283 So.2d 49, 50–51 (Fla.App.1973); *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609–10 (N.Y.), *cert. denied*, 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976); *State v. Hyde*, 26 Ohio App.2d 32, 268 N.E.2d 820, 821 (Ohio App.1971); *State v. Sanders*, 8 Wash. App. 306, 506 P.2d 892, 895 (1973). *But see Condon v. People*, 176 Colo. 212, 489 P.2d 1297, 1300 (Colo.1971).

could see through an apparent defect in the blinds into the building. After finding that the surreptitious peering into the window constituted a search, the court turned to the issue of whether the officer's action constituted unreasonable governmental intrusion into the privacy of the market. The court found that even though the degree of intrusion was "relatively minor," the search was unreasonable because there was "no overriding . . . emergency and there [were] other plausible alternatives available." *Id.* at 454.

> [T]he officer's conduct must be weighed against the alternatives of determining if the front door was locked, of attempting to visualize the activity through the uncovered front doors, of knocking on the front door to obtain entry *and of calling police headquarters to have the owner contacted.*

*Id.* at 455 (emphasis added).

Similarly, in the present case, there were alternatives available. It would have been a simple matter for the officers to have called the dispatcher with their radio and had him contact the owner to obtain permission to enter. Although not completely clear, the evidence indicates that this was the police department's normal procedure.[16] The record also indicates that the Juneau Police Department maintains a list of the owners and managers of the commercial buildings in this area. Advance written consent to enter a building if it is found unlocked could easily be obtained from these people if they desired to give such consent.

In *People v. Parra*, 30 Cal.App.3d 729, 106 Cal.Rptr. 531, *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973),[17] the Cali-

fornia court dealt with a factual situation closely resembling, but not identical to, the factual circumstances arising in the case at bar. Although *Parra* is relied on by the majority, I believe that the reasoning of *Parra* supports suppression of the evidence in this case. At nightfall, an officer arrived at a shopping center in response to a citizen's report that the front door of a florist shop was open. Although the sign indicated that the shop was closed, the front door was ajar. The lock could be worked only with its key. The officer checked the door and the front window for the name of the proprietor, but found none. He then stepped inside the shop and, with the aid of a flashlight, looked for the same information. A radio check with the police dispatcher failed to reveal the name of the person responsible for the premises. The officer explained the reason for his investigation as follows, *id.* at 532:

> Well, the fact that the door was left open and the building could be entered, the reason we have to have responsible person come down is to check to see if anything is missing, to see if a crime is committed and to secure his building and make sure everything was to his satisfaction before leaving.

The officer summoned his shift supervisor for assistance, and the two reentered the shop. The stated reason for proceeding through the premises was to attempt to secure the store for the owner and to contact him to find out if anything had been taken. During this procedure, heroin was discovered. In justifying the search, the court pointed out that the officers had first exhausted the obvious sources of informa-

---

**16.** *See United States v. Blitz*, 199 F.Supp. 326, 327 (E.D.N.Y.1961); *State v. Sauve*, 112 Ariz. 576, 544 P.2d 1091, 1092 (1976). Both cases hold that there was no exigency when an officer could be posted to watch the premises or the vehicle in question while the other officer obtained a warrant. We do not pass on whether such a procedure would be required, as the feasibility may well depend on the particular circumstances involved. We simply hold that an effort should have been made to contact the

responsible party. It is not clear whether the owner is routinely called before or after securing the building.

**17.** *See also State v. Bell*, 249 So.2d 748 (Fla. App.1971), which reached a similar result. The case does not discuss exhaustion of reasonable efforts to secure consent other than in the context of a statute which required officers to knock and announce their presence or purpose before entering.

tion as to the identification of the proprietor.[18]

It is this very factor which compels me to conclude that the search in the present case does not come within the emergency doctrine. Before a search may be so justified, reasonable alternatives must be exhausted. Here, the City kept a list of those responsible for the premises. It would have been a simple matter to have radio-telephoned police headquarters to have the owner contacted.

In fact, Officer Kalwara testified:

Q. Did you have a radio with you that evening?
A. Yes, Sir.
Q. Could you have called dispatch before you entered the building?
A. Yes, Sir, I could have.
Q. And you didn't on this occasion?
A. No, Sir.[19]

## CONCLUSION

The majority acknowledges the requirement that prior to the search, less intrusive alternatives should be pursued; but my colleagues refuse to put teeth into the requirement. The majority recognizes that contacting the owner before entering might have been reasonable. *See* majority opinion at 245. They conclude, however, that the existence of that reasonable alternative does not mean that what the police did was unreasonable.

There may be several reasonable alternatives including that of a warrantless search.

This illustrates the danger of utilizing an undisciplined standard of reasonableness to justify a search. Despite a reasonable alternative being available, the court would permit a search without a warrant. It is a rare case that police do not believe searches to be reasonable. The warrant requirement itself will become meaningless as a "reasonable alternative" which is not controlling if there is a reasonable basis for a search.

I am cognizant of the need of police officers to respond to exigencies arising in the performance of their duties. I would recognize the right to an emergency aid search defined in the manner set forth by the New York Court of Appeals in *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609 (N.Y.), *cert. denied*, 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976).[20] Such a search, however, cannot be justified as immediately necessary for the protection of life or property if a reasonable alternative is available. Absent an emergency requiring immediate entry, reasonable efforts to contact and secure the consent of the person responsible for the premises must be attempted before entry can be justified. To hold otherwise would permit entry of any commercial premise found to be unlocked at night, substantially weakening the guarantees against unreasonable searches found in the constitutions of the United States and Alaska.

I conclude that the officers' entry into the building was an unreasonable search under the fourth amendment of the United States Constitution and article I, section 14, of the Alaska Constitution [21] and that the

---

**18.** The initial entry to the shop was made prior to exhausting other sources as to identification of the owner. No evidence was obtained, however, as a result of that entry. The court, nevertheless, found the entry lawful "to provide for security." If the entry revealed that it was possible to close and lock the door, then according to *Parra*, the officers could go no further.

**19.** The majority indicates that on a prior occasion when the theatre door was found open, it was secured and the owner was subsequently notified. This sequence is far from clear as Officer Kalwara testified:

Q. Corporal Kalwara, have you ever found that door open before?
A. Yes, Sir.
Q. What have you done then?
A. Called the "responsible."

**20.** *See* text at 248 *supra*.

**21.** The state cites numerous cases to support its argument that officers may investigate suspicious circumstances. None of the cases, however, involves entries into a private building except where the officers had probable cause to arrest criminal participants, probable cause to seize evidence in order to avoid its destruction or consent. *United States v.*

order of the superior court suppressing the evidence seized during the unlawful search should be AFFIRMED.

*Wright*, 146 U.S.App.D.C. 126, 449 F.2d 1355 (D.C. Cir. 1971) (per curiam) (plain view and probable cause to seize evidence about to be hauled away), *cert. denied*, 405 U.S. 947, 92 S.Ct. 986, 30 L.Ed.2d 817 (1972); *People v. Baldwin*, 62 Cal.App.3d 727, 133 Cal.Rptr. 427 (1976) (police knocked on front door of home and defendant opened door; police entered only after smelling marijuana); *People v. Superior Court*, 33 Cal.App.3d 475, 109 Cal.Rptr. 106 (1973) (plain view); *State v. Bell*, 249 So.2d 748 (Fla.App.1971) (probable cause to enter business premises based on reasonable belief that crime was being committed and reasonable belief that announcement of presence would increase peril to officer); *People v. Abrams*, 48 Ill.2d 446, 271 N.E.2d 37 (1971) (public party and consent); *Bies v. State*, 76 Wis.2d 457, 251 N.W.2d 461 (1977) (stolen property in plain view through open garage door from observation point outside the building where officer has a right to be). Several cases cited by the state involve police entry into a commercial building or other establishment which was open to the public or entry into a common area. *People v. Becker*, 188 Colo. 160, 533 P.2d 494 (1975) (observation through defendant's open apartment window of stolen furniture from vantage point of a common area); *People v. Walker*, 30 Ill.2d 213, 195 N.E.2d 654 (1964) (entry by undercover officer posing as a member of general public to place illegal bet); *People v. Punyko*, 9 Ill.App.3d 1052, 293 N.E.2d 672 (1973) (police entry into defendant's place of business open to public).