Daniel **ZINN**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 6230.

Court of Appeals of Alaska.

Dec. 23, 1982.

Dick L. Madson, Cowper & Madson, Fairbanks, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

OPINION

Before COATS and SINGLETON, JJ., and MATTHEWS, Justice.*

MATTHEWS, Justice.

Appellant Daniel Zinn was charged and convicted of unlawfully possessing a firearm while under the influence of intoxicating liquor, a misdemeanor proscribed by AS 11.61.210.[1] On appeal he contends that the trial court should have granted his motion to suppress evidence seized pursuant to a search warrant which was obtained as the result of an earlier warrantless entry into his home. We agree and reverse.

At approximately 2:00 a.m. on November 29, 1980 in Browerville, a settlement located on the outskirts of Barrow, the North Slope Borough police responded to a report of a gun being fired. The officer in charge, Corporal Reed, contacted two witnesses at H Building, an apartment house. He was told that two men had a rifle and had fired two shots from the exterior walkway of the building in a direction away from the building. The men who had fired the shots were said to be inside apartment No. 3. Reed proceeded to the vicinity of the apartment. A Cap Williams came out of the apartment. Upon questioning he said he had not heard any shots and knew nothing about shots being fired. One Laura Smith also exited from the apartment and said that some friends of hers from apartment 3 had been target practicing.

At that point Corporal Reed and one other policeman drew their hand guns and knocked on the door of the apartment. The door was opened by Zinn. Without requesting permission, the police then entered the apartment with their guns pointed at Zinn and the other occupant of the apartment. Reed recognized Zinn, as Zinn had previously been Director of the Department of Public Safety of the North Slope Borough and, as such, Reed's superior. Reed asked Zinn if he knew anything about guns being fired and if he had any guns in the apartment. Zinn answered in the negative. Reed observed that both Zinn and the other occupant appeared to be under the influence of alcohol. Reed then opened the door of a storage closet next to where Zinn was standing. There he saw two gun cases on the floor. He removed a high powered rifle from one of the cases and a shotgun from the other and inspected them to see if he could ascertain whether they had been fired. Thereafter, Reed put the guns back in their cases and left them in the closet. Reed told Zinn and the other occupant that they were too intoxicated to have firearms in their possession, that they should leave the firearms alone, and, along with the other police officer, left the apartment.

A search warrant was obtained describing, among other things, the guns which Reed had observed in Zinn's closet. The warrant was executed and the rifle was seized and later used as evidence against Zinn.

■ It is well established that all warrantless entries are presumptively unlaw-

---

* Matthews, Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. AS 11.61.210 provides:

 *Misconduct involving weapons in the second degree.* (a) A person commits the crime of misconduct involving weapons in the second degree if he

 (1) possesses on his person a firearm while under the influence of an intoxicating liquor or drug;

 (2) discharges a firearm from, on, or across a highway; or

 (3) discharges a firearm with reckless disregard for a risk of damage to property or a risk of physical injury to a person.

 (b) For purposes of (a)(1) of this section, a person is under the influence of an intoxicating liquor or drug when, as a result of the introduction of an intoxicating liquor or drug into his body, his physical or mental abilities are impaired so that he no longer has the ability to possess a firearm with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstances.

 (c) Misconduct involving weapons in the second degree is a class A misdemeanor.

ful; they can be justified only if they come within a recognized exception to the warrant requirement. *Gallmeyer v. State,* 640 P.2d 837, 841 (Alaska App.1982); *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650 (1980). The burden of proving that a warrantless entry is justified is on the state. *Schraff v. State,* 544 P.2d 834, 838 (Alaska 1975). Of those several areas in which an individual's privacy receives protection by the Fourth Amendment to the United States Constitution, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home. . . ." *Payton v. New York,* 445 U.S. at 589, 100 S.Ct. at 1381, 63 L.Ed.2d at 653. *See State v. Myers,* 601 P.2d 239, 242, 243 (Alaska 1979). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York,* 445 U.S. at 585, 100 S.Ct. at 1379, 63 L.Ed.2d at 650, quoting *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972). On appeal, however, where a warrantless intrusion has been upheld, we must resolve conflicts in the evidence in a manner which sustains the ruling of the trial court. *Stumbaugh v. State,* 599 P.2d 166, 172 (Alaska 1979).

 With these general principles in mind we turn to the justification for the warrantless entry offered here. The exception to the warrant requirement which the state contends is applicable is the so-called "emergency aid" doctrine. In *Gallmeyer v. State,* this court summarized the elements necessary to justify application of this doctrine:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

640 P.2d at 842 (footnote omitted).

With respect to the first ground, whether there is a reasonable basis to believe that an emergency is at hand, "it is well settled that the existence of an emergency must be determined by an objective standard—whether the evidence would have led a prudent and reasonable officer to perceive an immediate need to take action in order to prevent death or to protect against serious injury to persons or property." *Id.*

The state argues that an emergency existed in this case because the police could reasonably have believed that someone was injured or otherwise in need of aid inside the apartment. We have no doubt that the sound of shooting coming from inside a dwelling will ordinarily justify a police entry to look for and give aid to possible victims.[2] In this case, however, two shots were reported, and two witnesses had told Corporal Reed that they had seen two men fire the shots outside of and away from the apartment building.[3] Further, the two witnesses indicated that to their knowledge no one had been shot. It is evidence, given this information, that there were not reasonable grounds to believe that a shooting victim, or someone else in need of emergency aid, was inside the apartment.

The state makes no other argument in support of the warrantless entry. Accord-

---

**2.** *See* W. LaFave, Search & Seizure § 616, at 470 (1978).

**3.** Corporal Reed was asked concerning the two witnesses whom he contacted before proceeding to apartment No. 3:

Q. And they told you basically that two men had a rifle, and two shots were fired, right?
A. Yes, sir.

Q. And they were fired in the general direction on that map there, if you look at the sketch, in the general direction where that arrow is drawn [indicating away from the apartment building] is that fair to say?
A. Yes, sir.

There is no other evidence pertaining to the information Corporal Reed had at the time of the entry which conflicts with the foregoing.

ingly, we hold the entry to have been unlawful. It follows that the motion to suppress should have been granted. Since no harmless error contention is made, the judgment must be reversed.

REVERSED.

BRYNER, C.J., not participating.